## HODGSON v. MOUNTAIN & GULF OIL CO.

(District Court, D. Wyoming. March 8, 1924.)

No. 1350.

1. **Mines and minerals ⬤⟿38(2)—Equity does not look with favor on prosecution of a claim purchased from colocator's heirs at price not disclosed.**

Equity does not look with favor on the prosecution of a mining claim by purchaser from the heirs of a colocator at a price which the pleadings did not disclose, as it carries the inference of a speculation.

2. **Mines and minerals ⬤⟿5—Colocator's assignee not within inuring clause of federal Leasing Act.**

Where the Interior Department granted a lease to defendant, *held,* that the assignee of the heirs of a colocator is not within Leasing Act Feb. 25, 1920, § 19 (Comp. St. Ann. Supp. 1923, § 4640¼j), providing that all

⬤⟿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

permits or leases hereunder shall inure to the benefit of the claimant, and all persons claiming through or under him by lease, contract, or otherwise, as their interests may appear.

3. **Statutes ⬤⇒194—"Clean-up" phrase includes only things similar to those mentioned; "ejusdem generis."**
Under the "ejusdem generis" rule, a "clean-up" phrase, such as the term "otherwise" with respect to a classification which immediately precedes it, includes only things of a like or similar kind, and nothing of a higher class than that which it immediately follows.
[Ed. Note.—For other definitions, see Words and Phrases, First and Second series, Ejusdem Generis.]

4. **Mines and minerals ⬤⇒36—Colocator's right is that of cotenant.**
The right of a colocator is that of a cotenant or co-owner, and is a higher classification of property right than that established by either lease or contract.

5. **Public lands ⬤⇒106(1)—Decision of Interior Department conclusive.**
Where the Interior Department has spoken in regard to the disposition of title to government land, that decision is final, in the absence of fraud or error of law.

6. **Mines and minerals ⬤⇒5—Rule of Interior Department under Leasing Act has effect of statute.**
Interior Department rule 24½, enunciated for the conduct of proceedings under Leasing Act Feb. 25, 1920 (Comp. St. Ann. Supp. 1923, §§ 4640¼–4640¼ss), providing that any person claiming a fractional interest in a mining claim may make application for a lease or permit stating the extent of his interest and the reason for nonjoinder of his co-owner, has the effect of a statute, and gives any colocator a right to his day in the tribunal of that department.

7. **Mines and minerals ⬤⇒5—When decision of Interior Department under Leasing Act final, and not disturbed by the courts, stated.**
It is the intention of Leasing Act Feb. 25, 1920 (Comp. St. Ann. Supp. 1923, §§ 4640¼–4640¼ss), to give the Department of the Interior the right to grant leases on placer mining claims to the owner thereof, and when the department has made findings of fact and spoken with respect to the ownership, unless the decision is impeached for fraud, jurisdictional irregularities, or on account of being based on erroneous propositions of law, that adjudication is final, and will not be disturbed by the courts.

In Equity. Suit by J. M. Hodgson against the Mountain & Gulf Oil Company. On motion to dismiss. Motion sustained.

J. M. Hodgson, of Cheyenne, Wyo., in pro. per.

Dines, Dines & Holme, Harold D. Roberts, Paul P. Prosser, and Charles E. Works, all of Denver, Colo., for defendant.

KENNEDY, District Judge. This case presents a similar situation to that heretofore presented in the case of Hodgson v. Federal Oil & Development Co., 285 Fed. 546, decided by this court in December, 1922.

Here, as there, the plaintiff in equity seeks to impress a trust in the nature of an undivided one-eighth interest in a lease and the benefits accruing therefrom, granted by the Interior Department to the defendant. In that case, as here, it appears upon the face of the pleading that the plaintiff claims to be the owner of a one-eighth interest in the property rights covered by the lease, by virtue of a purchase and assignment from the heirs of one of the original locators of a mining claim

⬤⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

upon which the lease was predicated. In that case the bill of com-plaint set up the proceedings before the Interior Department, alleging an erroneous decision of that Department based upon the law applica-ble to the situation. That feature is absent in the case at bar, but gen-erally speaking, with that exception, the facts stated in that memoran-dum would be a fair statement of the facts in this case.

The defendant has interposed a motion to dismiss, setting forth defenses that the United States is an indispensable party; that the bill of complaint fails to state facts sufficient to constitute a valid cause in equity; that it appears upon the face of the complaint that the plain-tiff has been guilty of laches and that he is barred by the limitations contained in the Leasing Act under which the lease was granted, and that there was a final determination of all matters in controversy by the Department of the Interior at the time the lease was granted.

[1] There were matters alleged in the former Hodgson Case which present perhaps stronger grounds for adopting the defense of laches than in the case at bar, and yet the court considers that the allegations here found justify a like conclusion. The decision in that case, and the general underlying principles there adopted, will be here recognized for the purpose of disposing of this suit. Supplementing this finding of laches, and that the claim is a stale one, it appears that it is not being prosecuted in favor of the heirs of the colocator whose interest may be involved, but by a purchaser of that claim at a price which the pleading does not disclose, therefore carrying the inference of specula-tion on the part of the purchaser. Equity does not look with favor upon claims of this nature. Sturm v. Wiess (C. C. A.) 273 Fed. 457.

[2] Particular stress in oral argument by plaintiff in his own behalf was laid upon the contention concerning his rights under the inuring clause of the Act of February 25, 1920 (41 Stat. 437 [Comp. St. Ann. Supp. 1923, §§ 4640¼–4640¼ss]), which is the act under which the lease was granted to defendant. This raises one of the most difficult questions in the case. This court has recently decided, in the case of Burke v. Horth, 296 Fed. 256, that the inuring clause of the Leasing Act did apply in the adjudication of rights as between two separate and distinct lessees of the owner of a mining claim, who as such had been granted a lease upon his claim by the Interior Department. In that case the department had refused to recognize lessees of the owner of the claim in granting a lease thereon, which was in accord with the well-defined rule of the department in this regard.

There, in the opinion of the court, the lessees came clearly within the provision of the Leasing Act, as they each claimed under former and separate leases from the owner of the claim. Here the plaintiff is asserting a claim based upon an alleged right as one of the colocators, not a party to the proceeding for lease before the department, the own-ership of the location in which he was a colocator being the basis of the lease granted by the department to the lessee through rights previ-ously secured by that lessee from other locators.

The question is whether such a situation brings the colocator or his assignee in the litigation before the court within the inuring clause of the Leasing Act. The so-called inuring clause is a part of section 19

of that act (Comp. St. Ann. Supp. 1923, § 4640¼j), and reads as follows:

"All permits or leases hereunder shall inure to the benefit of the claimant and all persons claiming through or under him by lease, contract, or otherwise, as their interests may appear."

There seems to be no dispute, and it sufficiently appears from the face of the bill, that the lease was granted under said section 19. Unfortunately, so far as counsel or this court have been able to discover, this particular clause of the Leasing Act has not been construed by any court under the situation which here presents itself. Does the colocator in this instance present a claim which comes through or under the defendant lessee "by lease, contract or otherwise," in accordance with the statute?

It is the contention of the plaintiff that his claim comes within this provision of the law, while the defendant earnestly maintains that it cannot be so construed. Whether there is a legal distinction in meaning between the words "through" and "under" seems to be immaterial here, as each is limited by the phraseology following, to wit: "by lease, contract or otherwise." Manifestly the plaintiff does not claim through or under any lease or contract, and must therefore, if recognized, place himself within the "otherwise" class.

[3] What is the interpretation of the term "otherwise" with respect to the classification which immediately precedes it? The ejusdem generis rule of statutory construction is that a "clean-up" phrase of this character will include only things of a like or similar kind, and nothing of a higher class than that which it immediately follows: Pennsylvania Steel Co. v. Washington (D. C.) 194 Fed. 1011–1017; Hickman v. Cabot, 183 Fed. 747, 106 C. C. A. 183; Reiche v. Smythe, 13 Wall. 162, 20 L. Ed. 566.

[4] The basis of plaintiff's right is that of a colocator, which establishes a cotenancy or co-ownership, and which is undoubtedly a higher classification of property right than that established by either lease or contract. Unless, therefore, the court should disregard the ordinary and well-defined rule of statutory construction in its acceptance and meaning of the term "otherwise," as here presented, it would be necessary to exclude plaintiff from any rights or benefits accruing under the inuring clause.

[5] Correlated with this phase of the case, is the fact that the Interior Department has passed upon the title ownership and granted a lease to the defendant. When the department has spoken in regard to the disposition of title to government lands, that decision is final, unless it be shown that there be fraud or errors of law entering into that decision. Neither of these is set forth in the bill in this case. As to why the department granted a lease, if it did, upon the presentation of a claim of title derived from less than a full number of the original locators, this court does not know, nor does it feel that it has a right to inquire, so long, at least, as no errors of law are set forth in the bill, nor fraud alleged. The Leasing Act provides how any one who is interested in securing leases through any of its provisions may present his claim and

be heard. Under regulations authorized by the act, notice is required to be given of all leases sought, so that any one interested may come in and present his claim, adverse or otherwise. We must assume that the regular procedure was pursued in the case here under consideration, and there is no showing that the plaintiff or his assignors made any appearance or presented any claim to the department within the time prescribed by such notice. The fact that the heirs of the locator may not have known of his right under the circumstances in this case has been disposed of elsewhere.

[6] Rule 24½ of the department, enunciated for the conduct of proceedings under the act, prescribes that:

"Any persons claiming a fractional interest in such claim may make application for a lease or permit, stating the nature and extent of his interest and the reasons for nonjoinder of his co-owner or co-owners."

This regulation, which may be considered as having the force and effect of statute, gave any colocator the right to his day in the tribunal of the department.

[7] In short, this court is impressed with the theory that it was the intention of the Leasing Act as a whole to give the Department of the Interior the right to grant leases upon placer mining claims to the owners thereof, and when the department has made findings of fact and spoken with respect to the ownership, unless the decision is impeached for fraud, jurisdictional irregularities, or on account of being based upon erroneous propositions of law, that adjudication is final, and will not be disturbed by the courts.

For the reasons stated, the motion to dismiss will be sustained, and the cause dismissed, at plaintiff's cost, reserving to him his proper exception in the premises.