IN RE ESTATE OF ORVILLE E. ANDREWS.

PEARL W. TRITLE et al., appellees, v. CLAIRE H. ANDREWS et al., appellants.

No. 48448.

(Reported in 64 N.W.2d 261)

May 4, 1954.

822

Wm. W. Crissman, of Cedar Rapids, for appellants.

Jordan & Jordan and Ernest F. Pence, all of Cedar Rapids, for appellees.

OLIVER, J.—Pearl W. Tritle and Burt E. Tritle made claim against the executors of the estate of Orville E. Andrews for $15,000 based upon decedent's promissory note to claimants. The executors pleaded lack of consideration for the note and want of delivery thereof. Upon trial the jury returned a verdict for claimants. From judgment allowing the claim, the executors prosecute this appeal. The main issue is the sufficiency of the evidence to support the verdict. In considering such sufficiency the rule requires that the evidence be considered in the light most favorable to claimants.

Decedent, Orville E. Andrews, and his wife, Emma Andrews, had lived on their farm in Linn County for many years. They owned another farm also. They had no issue. Claimant Pearl W. Tritle, the wife of claimant Burt E. Tritle, was a niece of Emma Andrews. In June 1950 decedent, Orville E. Andrews, and his wife, Emma, moved to Marion, Iowa. Emma Andrews was taken to a hospital and died early in December 1950. At that time Pearl Tritle moved into the home with decedent and cared for it until April 7, 1951. Burt Tritle lived there from December 23, 1950 to April 7, 1951. Orville E. Andrews died October 25, 1951.

About March 15, 1951, Mr. and Mrs. Kenneth Jordan called at the home in Marion. Claimants were absent. Decedent showed the Jordans a five-page typewritten letter dated March 9, 1951, which they read. Decedent then signed the letter in their presence, handed it to the Jordans "to witness", and the Jordans signed it as witnesses. Decedent next showed the Jordans the note here involved, as follows:

"15,000

"on date of my death after date I promise to pay to the order of Pearl W. Tritle and Burt E. Tritle, as joint tenants

and not as tenants in common Fifteen Thousand and No/Dollars at Marion, Linn County, Iowa. Value received with interest at the rate of none percent per annum.

"Orville E. Andrews."

Decedent placed the note and letter in an envelope, sealed it, and asked the Jordans "to take it and keep it until after his death, and then give it to Pearl and Burt Tritle." Mr. Jordan testified he understood he was to keep it for Pearl and Burt. The Jordans took the envelope and Mr. Jordan placed it in his lockbox in the Alburnett Bank. About the middle of August 1951, decedent asked Mr. Jordan if he could get the letter, "stating that he would like to have it with some other papers he had in his desk at home, because it contained detailed information, quite a bit, about his funeral, how he wanted things done, etc." Mr. Jordan went to Alburnett and got the sealed envelope "and gave it to decedent."

After decedent's death the sealed envelope was found in decedent's desk by Claire H. Andrews, who was later appointed an executor of the will of decedent. Upon the envelope was typewritten "To Pearl and Burt." Claire Andrews handed it to claimant Pearl W. Tritle. She opened it and found the note and letter.

The letter to "dear Pearl and Burt" refers to plans decedent and Emma had made for the disposition of their property and the distribution of their estates. It contains directions to Pearl for decedent's funeral and for the disposition of various furnishings, etc., in the home. It refers to many services claimants had performed for decedent and his wife. With reference to their failing health and the sale of their two farms thereby necessitated, it states in part:

"You came to our farm every few days all winter long and shoveled snow, carried in cobs, coal and water to last for several days and, if we felt worse than usual, you came every day— bringing everything a person could want to eat. You did everything for us that anyone could wish for, often driving from 20 to 40 miles a trip—depending on where you lived. * * *

"You run 'blind ads' in the Gazette and showed the farms to anyone interested, then they came to Marion and talked with

us about them. We sold both farms and you folks did every bit of the work connected with it all. * * *.

"We figured we owed you folks several thousand dollars for work and expense you had been to for us during the past several years * * *.

"Besides a will is considered as 'gifts' and this money, we planned to pay to you, wasn't any 'gift' by any means—you had it worked out long ago. The reason we wanted you included in the will too was because we wanted to make that—a gift to you. * * *.

"* * * Emma is gone and we didn't get to do what we had planned. * * * we didn't get your 'pay' to you because the last farm wasn't sold until the day before Emma went to the hospital. * * *.

"I could take out extra bonds for you but Emma and I decided not to give you your 'pay' in bonds but give it to you in money * * *. I've decided to give you a note for the amount Emma and I planned to pay you. This note has nothing to do with your share in the will or any bonds, even if I do decide later on to make out another will, because this note is in payment of what I owed you at Emma's death and anything else I might decide to do for you is a 'gift'. * * * I may not date the note because, if I should live a great many years, it could be outlawed, I'm afraid. I'm making it payable 'at my death' and I want you to turn it into Hervie Lockwood right away because I want this paid first—after my funeral expenses."

There was evidence that when decedent and his wife were planning to move from the farm to Marion, decedent told Pearl Tritle, " 'if you and Burt will promise to help us get to town and look after the farms I will see that you are well paid for it.' " Burt Tritle testified: "Well, when they had a lot of work they promised to pay us for it." He was asked, "Did you expect pay thereafter?" He answered, "They promised us they would pay us, yes."

■ I. Appellants assign error to the order admitting decedent's letter in evidence, over their objections. One contention is the letter was incompetent as hearsay. This contention is without merit. The instrument in question was decedent's letter

of transmittal which was enclosed with and accompanied decedent's promissory note and was explanatory of the transaction. Hence, it was admissible as part of the res gestae. See Carlson v. Bankers Trust Co., 242 Iowa 1207, 1216, 50 N.W.2d 1.

 Another reason the statements in the letter were competent evidence in the action against the estate of the deceased writer was, they were admissions by him. O'Neil v. Redfield, 158 Iowa 246, 250, 139 N.W. 555. Furthermore, declarations of a person since deceased, against an existing pecuniary interest by declarant, are admissible, as well in actions between third persons, as an exception to the hearsay rule. 31 C. J. S. 958, Evidence, section 217. County of Mahaska v. Ingalls, 16 Iowa 81. In this state the doctrine is declared by statute. Section 622.27, Code of Iowa, 1950, provides:

"The entries and other writings of a person deceased, who was in a position to know the facts therein stated, made at or near the time of the transaction, are presumptive evidence of such facts, when the entry was made against the interest of the person so making it * * *."

 Another contention of appellants is the letter "is only a statement of intention or present feeling of the deceased, and not of any former fact." The record is to the contrary. A letter of transmittal of a promissory note may not properly be thus characterized. In addition to directions for the funeral and the disposition of various household articles, etc., this letter is largely a recitation of pertinent historical facts in the lives of decedent and Emma and their decisions and acts based thereon. Among other things it states decedent and Emma "figured we owed you folks several thousand dollars" and the $15,000 note is for the amount "Emma and I planned to pay you."

Appellants contend also the statements in the letter that decedent owed the Tritles for things they had done for him are legal conclusions which make the letter inadmissible. Apparently appellants refer to the statements: "We figured we owed you folks several thousand dollars for work and expense * * *. * * * this money we planned to pay to you * * *—you had it worked out long ago. * * * I've decided to give you a note for the amount Emma and I planned to pay you."

826

■ We do not agree these statements are legal conclusions. But were they such, that would not have rendered them inadmissible. Helberg v. Zuck, 201 Iowa 860, 863, 208 N.W. 209, 210, states: "The action is to charge him—not a third person. His admission is not rendered inadmissible against himself because of its being his conclusion or based on hearsay [citations]."

The text in 31 C. J. S. 963, Evidence, section 219b, states: "Thus the declaration is admissible where it amounts to an acknowledgment of declarant's indebtedness to others * * *."

We hold the order overruling appellants' objections to the admission in evidence of the letter was correct.

■ II. Another assignment of error is based upon the asserted insufficiency of the evidence to warrant a finding of sufficient consideration for the note. We are satisfied the proof furnished by decedent's letter alone is sufficient for that purpose. The letter makes it clear decedent recognized his liability and gave the note in the amount Emma and he had agreed he owed claimants for their services prior to the death of Emma. In addition there was evidence decedent promised in advance to pay claimants for some of the services rendered and also evidence claimants expected pay.

It is contended there is a presumption the services rendered decedent by claimants during the period from December 1950 to April 1951 were gratuitous because claimants were members of decedent's family. Although it would be a sufficient answer that the note was for services rendered prior to Emma's death, it may be well to refer to the record. When Emma was taken to the hospital where she died December 1, decedent, Orville, was suddenly left alone in his home. Claimant Pearl Tritle left her abode, rushed to the home in Marion and took over its management and the care of decedent. Late in December claimant Burt Tritle came to the home. Both claimants remained there until about April 7 when other arrangements could be made. It is clear these circumstances do not require a finding of a family relationship, as a matter of law. Were there a presumption claimants' services during this period were gratuitous the record is sufficient to rebut it.

■■ Ordinarily where one person performs services for

another which are known to and accepted by the latter, the law implies a promise to pay therefor. In re Estate of Klepper, 244 Iowa 521, 525–527, 57 N.W.2d 565, 567, 568, and citations; In re Estate of Larsen, 235 Iowa 57, 15 N.W.2d 919. Nor does the fact that Emma was Pearl Tritle's aunt destroy that presumption. In re Estate of Beck, 239 Iowa 655, 32 N.W.2d 217, involves a claim for services rendered claimant's uncle, in which the court applied the rule. To the same effect is Finkle v. Finkle, 239 Iowa 783, 32 N.W.2d 807.

The text in 58 Am. Jur. 533, Work and Labor, section 28, states: "In cases involving rendition of services by one kinsman for another, where the relationship is that of uncle, aunt, niece, or nephew, the rule that ordinarily obtains is that the law presumes that the services are to be paid for; and it is a question for the jury whether the circumstances under which the services were rendered are such as to overcome the ordinary rule. Indeed, the only effect of the relationship seems to be to make the ordinary rule more easily rebuttable than is commonly the case."

We hold the proof of consideration was sufficient to support the verdict.

 III. Appellants contend the evidence of delivery of the note was insufficient as a matter of law. Section 541.192, Code of Iowa, 1950, in the Negotiable Instruments Law, states: " 'Delivery' means transfer of possession, actual or constructive, from one person to another."

What constitutes delivery of a promissory note by the maker is largely a matter of intention. In this case the following interrogatory was submitted to the jury:

"Do you find that when Orville E. Andrews, on or about March 15, 1951 placed the promissory note Exhibit 'A' in the possession of Kenneth J. Jordan and Pearl O. Jordan that Orville E. Andrews then had the intention to part with all control over the same and to irrevocably obligate himself or his estate upon said instrument?"

The jury answered the interrogatory, "yes."

This interrogatory correctly sets out the rule of law here applicable. In re Estate of Smith, 244 Iowa 643, 56 N.W.2d

477; Lawrence v. Scurry, 187 Iowa 1055, 175 N.W. 22; In re Estate of Rule, 178 Iowa 184, 159 N.W. 699; In re Estate of Reeve, 111 Iowa 260, 82 N.W. 912; 10 C. J. S. 512, Bills and Notes, section 78d.

Reference has been made to evidence decedent handed the Jordans an envelope containing the note and letter with instructions to hold it and deliver it to claimants after his death. Under the authorities last-cited it is clear this evidence was sufficient to support a finding of delivery of the note to claimants. Whenever the maker of a note for a sufficient consideration has thus placed it in the possession or control of a third person for the payee, with intention thereby to make his act effective, the delivery is perfect. In re Estate of Rule, supra, 178 Iowa 184, 199, 159 N.W. 699, 705.

Thereafter the maker has no legal right to recall the note and his recovery of the possession thereof without the consent of the payee will not operate to invalidate the delivery or defeat the rights of the latter. True, such recovery of possession may be a circumstance to be considered in determining the intention of the maker at the time he placed it in the possession of the third person, but the weight to be given such circumstance is for the finder of the facts. How the claimants secured actual possession of the note after decedent's death is not here material. It is sufficient there had been a "perfect" delivery to the Jordans for them, about March 15, 1951, and the note was their property.

We conclude the issue of delivery was for the jury.

IV. Appellants requested no instructions. However, they make various complaints of those given. Their assignments of error 29 and 30 are predicated upon the contention the court erred in failing to instruct the jury on their pleaded defense the Jordans were the agents and bailees of the note for decedent.

Although this was pleaded, it was not, as appellants assert, a "defense." The jury was instructed claimants must prove "delivery" of the note, that delivery does not necessarily require a manual handing or delivery to the payee, "* * * if you find * * * [decedent] placed the promissory note * * * in the possession of * * * [the Jordans] * * * with the intention to part with all control over the same and that he or his estate * * *

should be irrevocably obligated by the instrument then there would be a delivery * * * even though it was later placed in his actual possession by Kenneth Jordan in turning over to * * * [decedent] the letter which was sealed in the envelope with the note. On the other hand, if you find * * * [decedent] did not [so intend, etc.] * * * but reserved to himself the right to change his mind, then there would not be a delivery * * *."

It was not necessary that a name or title be given the position or status of the Jordans in the transaction or that the jury catalogue them as agents or bailees or make some other classification. There was no such issue in the case. The issue was what was said and done and intended in connection with placing the note in the possession of the Jordans, as stated in the instruction. In re Estate of Rule, supra, 178 Iowa 184, 199, 159 N.W. 699. The purpose of instructions is to advise and inform the jury. An unnecessary excursion into the fields of agency and bailment would not promote this purpose and might confuse the jury. Hence, the failure to instruct on the so-called defense or issue was not error.

V. Assignments of error 31 and 32 assert the court failed to instruct the jury that delivery of a note to be effectual must be made either by or under the authority of the "maker", as required by Code section 541.16. No such instruction was here necessary. The only evidence of delivery in this case was by the maker in the transaction in which he placed the note in the possession of the Jordans. This delivery should not be confused with the transaction in which the note was handed Pearl Tritle after the death of decedent.

VI. In assignments of error 33 to 36 appellants assail instruction 7 which deals with consideration. A study of this instruction leads us to conclude it fairly states the law here involved on that question. There is no contention instruction 7 is erroneous or incorrect in any particular. The complaint is merely "that said instruction fails to fully and completely instruct the jury on all aspects of the sufficiency of consideration for a promissory note which are involved in the issues * * *." In the absence of a request for additional instructions or details on this issue the errors here assigned would not warrant a reversal.

However, that is not to suggest such request would have entitled appellants to additional instructions. We have already considered and held unsound some of the legal propositions here presented by appellants.—Affirmed.

All JUSTICES concur.