WILL ROBERTS, appellee, v. CHICAGO AND NORTHWESTERN RAILWAY COMPANY, appellant.

No. 50514.

February 6, 1962.

Sifford & Wadden, of Sioux City, and Davis, Huebner, Johnson, Burt & Fulton, of Des Moines, for appellant.

Hess, Pendleton & Thompson, of Sioux City, for appellee.

Peterson, J.—This is an action for $392.86 damages, claimed by plaintiff as the result of a collision between his automobile and a switch engine of defendant.

The jury returned a verdict for the amount claimed by plaintiff. Defendant appealed.

On November 11, 1959, at about 7 p.m., plaintiff was driving a Plymouth car west on Third Street in Sioux City. Third Street is a brick paved street. There were eight switch tracks crossing the street before plaintiff reached the track used by defendant. It had snowed heavily during the afternoon and the street was covered with a substantial covering of snow, and was very slippery. It was snowing hard at the time of the collision. Plaintiff testified he was driving along the street at about five miles per hour and was carefully looking to the north and to the south in view of the lack of visibility by reason of the hard snowstorm. He heard no train bell. In fact, the engineer on the switch engine testified later that the bell was either broken or frozen and

was not operating. The court properly instructed the jury "That it is the law of the State of Iowa that in a city, at a road crossing, it is the duty of the defendant to ring a bell of the locomotive continuously from a point at least sixty rods before the crossing, and the failure to do so constitutes negligence."

Plaintiff testified he heard no whistle until he was approaching the switch track on which defendant's switch engine, with fifteen cars attached, was moving in a northerly direction. He suddenly heard a loud blast from a whistle. He immediately applied his brakes, but he was only ten feet from the engine moving from the south over on the street. It was impossible for him to stop on the snow and slippery paving and he collided with the engine at about its center. The engine moved him along a short distance and then the train stopped. He was moving so slowly that he was not in any manner hurt, but the car was damaged in the amount above stated.

Mr. Francis Heilman was the engineer on the switch engine. He testified his train had been moving along at between four and five miles per hour. There were three other employees in the switch engine cab with him; the fireman and two switchmen. He testified the fireman called his attention to the fact that an automobile was approaching from the east. The fireman testified it was about two hundred feet away when he and the engineer looked at it. Some of the other witnesses said it was from six to seven car lengths away which would be about one hundred twenty-five feet. Mr. Heilman then stated that immediately after his first glance at the car driving west on Third Street he stopped looking at it. Thereafter he only looked down Third Street to the west. Mr. Heilman testified he had blown the whistle some time before he reached the street crossing.

The fireman stated he watched the car coming west on Third Street and as it came about forty feet from the crossing he noticed the rear end of the car weaving on the snow-packed street and exclaimed "He is going to hit us!" Mr. Heilman testified that when such statement was made he immediately gave a loud whistle blast. This was apparently the blast plaintiff heard. Mr. Heilman testified he immediately put on his emergency brakes and stopped his train in about 35 feet. The engine was, there-

fore, stopped on the traveled portion of Third Street. On cross-examination Mr. Heilman was asked

"Q. And what is your duty with respect to lookout? A. I looked toward the west or both directions."

Appellant raises two alleged errors. 1. The court erred in overruling the motion to withdraw from the consideration of the jury the issue of lookout. 2. The court erred in giving Instruction No. 13 as it described the issue of lookout.

I. Plaintiff had alleged failure of proper lookout in his petition. When he rested his case, defendant moved to strike the allegation, contending that no evidence had been offered as to the question of lookout. The motion was sustained, but the general motion for directed verdict was overruled.

Defendant then offered its evidence. A large part of defendant's evidence pertained to the question of lookout. When defendant rested, plaintiff moved for permission to amend his petition alleging improper lookout on the part of defendant, to conform to the evidence which had been offered. The court sustained the motion and plaintiff amended his petition accordingly.

We do not agree with defendant that failure to withdraw the issue of lookout was error. There was sufficient evidence offered by defendant's witnesses so that the trial court was justified in submitting to the jury the issue of proper lookout.

In the case of Ehrhardt v. Ruan Transport Corporation, 245 Iowa 193, 199, 61 N.W.2d 696, this court defined lookout as follows: "Proper lookout means more than to look straight ahead, or more than seeing the object; that it implies being watchful of the movements of his own vehicle as well as the movements of the thing seen; that it involves the care, prudence, watchfulness and attention of an ordinarily careful and prudent person under the circumstances."

We considered the question of lookout in Mueller v. Roben, 248 Iowa 699, 705, 82 N.W.2d 98. We defined lookout as follows —"that watchfulness which a prudent and reasonable person must maintain for his own safety and the safety of others, taking into consideration the circumstances with which he is immediately concerned or confronted." This was an automobile case, but the definition is pertinent.

In the railroad case of Southern Railway Co. v. Sanders,

145 Ky. 679, 141 S.W. 77, the court in substance said: The lookout that is contemplated by the law means a lookout that will enable the party keeping it to discover, in the exercise of reasonable care, the presence of persons on the track in time to give them warning of the danger, and to prevent injury to them by the application of the brakes or the other means at hand.

In the case at bar the engineer testified he first looked east on Third Street and saw plaintiff's automobile approaching. He immediately ceased further lookout as to plaintiff and devoted his full attention to looking west on Third Street. He testified that at no time were any automobiles approaching from the west and the only automobile approaching his train was plaintiff's automobile approaching from the east. The fireman testified he continuously looked at plaintiff's automobile as it was approaching. He testified plaintiff was coming at a rate of about 20 miles per hour. On the basis of the testimony of defendant's witnesses we cannot say as a matter of law that a proper lookout was maintained by the engineer or the train crew. Taking into consideration the absence of the ringing of a bell and the absence of a whistle as far as plaintiff's evidence discloses until plaintiff had almost reached the crossing, and the inattention of the engineer to plaintiff's approach, the testimony is such that the question of lookout became a question for the jury. The court was justified in permitting the amendment to the petition, and in overruling the motion to withdraw the issue of lookout.

II. Defendant alleges the trial court committed error in the wording of Instruction No. 13. It is the ordinary instruction as to lookout. As a part of the instruction the court stated: "You are instructed that it was the duty of said engineer on said locomotive to keep such a lookout as a reasonably prudent and cautious person would have used and exercised under like circumstances and conditions to observe persons and vehicles rightfully crossing said railroad crossing." Defendant's objection to the instruction is that it should not have been restricted to the engineer; that the other members of the train crew in the cab also had a duty as to lookout and the jury should have been so instructed. Defendant contends the fireman did maintain a proper lookout as to plaintiff.

There are two reasons why the instruction does not constitute reversible error. In the first place the engineer was the person in charge of the switch engine and of the train. He is the only person who can start and stop the train. In the second place the other members of the crew who were in the cab were subject to his supervision and the evidence shows that whatever happened with reference to plaintiff was communicated by the other members of the crew to the engineer. In view of such constant communication, defendant was not prejudiced in any manner by the failure of the trial court to specifically include other members of the crew in the instruction.

This matter was considered in the case of Ressler v. Wabash R. Co., 152 Iowa 449, 453, 132 N.W. 827, 829, in which case the court stated: "* * * in view of all the matters adduced in evidence, reasonable care requires the enginemen *in charge of a train* to anticipate the possibility of collision with persons rightfully using the crossing and to keep a lookout in approaching it in order to avoid such accident, then the omission so to do will be negligence." (Emphasis ours.)

III. The instant case is strongly illustrative of the fact that the peculiar facts and circumstances of the case being considered must always be taken into consideration. The facts that this collision happened on a dark night, when the street was covered with a heavy layer of snow and was very slippery and it was snowing hard at the time, all had a bearing on the question of lookout.

In case of Strom v. Des Moines and Central Iowa Ry. Co., 248 Iowa 1052, 1062, 82 N.W.2d 781, the court said: "Many of our railroad-crossing cases point out in substance that precedents are of little value because the facts control and they differ."

This subject was given consideration in 44 Am. Jur., Railroads, section 510, page 750, where the text states: "At ordinary crossings it is the duty of the railroad company to keep a reasonable lookout, and if the crossing is hazardous because of frequent vehicular traffic or obscured view of the travelers, the lookout must be correspondingly sharp. What would answer the requirements of a reasonable lookout depends, among other things, upon the amount and kind of travel reasonably to be expected

over the crossing, and the presence or absence of safeguards such as flagmen, gates, or electric signals."

The case is affirmed.—Affirmed.

GARFIELD, C. J., and BLISS, HAYS, LARSON, THORNTON, and SNELL, JJ., concur.

THOMPSON, J., dissents from Division I and from affirmance.

OLIVER, J., takes no part.