Phyllis I. HOYT, Administrator of the Estate
of Peary Hoyt, Jr., Deceased, Appellant,

v.

CHICAGO, ROCK ISLAND AND PACIFIC
RAILROAD COMPANY and Fred
Brown, Appellees.

Phyllis I. HOYT, Administrator of the Estate
of Peary Edward Hoyt, Deceased,
Appellee,

v.

CHICAGO, ROCK ISLAND AND PACIFIC
RAILROAD COMPANY and Fred
Brown, Appellant.

No. 55349.

Supreme Court of Iowa.

March 28, 1973.

Rehearing Denied May 17, 1973.

Nyemaster, Goode, McLaughlin, Emery & O'Brien, Des Moines, for appellant-administrator.

Gamble, Riepe, Martin, Webster & Fletcher, Des Moines, and Selby & Updegraff, Newton, for appellees-defendants.

LeGRAND, Justice.

This appeal arises out of a fatal railroad crossing accident which occurred on De-

cember 24, 1968. A 73-car freight train of Chicago, Rock Island, and Pacific Railroad Company struck a car driven by Peary Hoyt, Jr. His adult son, Peary Edward Hoyt, was a passenger in the vehicle. Both were killed. Plaintiff brought wrongful death actions as administrator of each, suing the railroad and Fred Brown, the train's engineer. A jury verdict in favor of the passenger's estate was returned in the amount of $35,000. In the case of Peary Hoyt, Jr. (the driver) the jury found for defendant. The administrator appeals from the adverse verdict in the case of Peary Hoyt, Jr. while the defendants appeal from plaintiff's verdict in the case of Peary Edward Hoyt. We affirm on both appeals.

Fairly summarized, the evidence shows the following facts leading up to the accident. Unless otherwise indicated, our references to Hoyt refer to Peary Hoyt, Jr., the driver of the car.

Hoyt was traveling west on an unpaved road just outside the city of Newton. Defendant's train was proceeding south. The road was "slick" and snow-packed. Approaching the crossing, he was going up an incline. There was a cross-buck standard marking the location of the tracks but no mechanical or other signal to indicate the approach of trains. The tracks curve just before reaching the crossing.

The mishap occurred at approximately 6:30 P.M. It was dark. The train's lights were on as were those of the Hoyt car. As the two made their way toward the eventual collision, the terrain over which the operators could observe each other—to Hoyt's right and the engineer's left—was partially covered by a grove of trees, which reduced visibility to some extent.

The train crew—the engineer and the brakeman—testified they saw the Hoyt headlights when the car was 750 feet and they were approximately 1200 feet from the impact. They also said they kept the car in their sight at all times until the collision. Further testimony indicated the whistle and bell on the train were activated at a whistle post about a quarter of a mile from the crossing. Both remained in operation from then on.

The engineer testified his brakes were already partially set and his speed was 50 M.P.H. Not until Hoyt was 100 to 150 feet from the crossing did it become apparent he was not going to stop. The engineer then put the train "on emergency" but it was too late to avoid a collision.

The front of the train struck the right side of Hoyt's car, inflicting injuries to both occupants from which they died.

In considering the errors assigned, we keep in mind the conclusions the jury must have reached. By finding for the passenger-son's estate, the jury found liability against both defendants; by rejecting the father-driver's claim, they necessarily held him guilty of contributory negligence which was a proximate cause of the accident.

Plaintiff alleges seven errors which raise four issues. They are (1) submitting as a specification of negligence on the issue of contributory negligence Hoyt's failure to stop at the railroad crossing in compliance with section 321.341, The Code, 1966; (2) withdrawing from the jury the question of the defendant's failure to keep a proper lookout; (3) instructing the jury that in order to recover plaintiff must prove negligence against both the railroad and the engineer, Fred Brown; and (4) prejudicially repeating and emphasizing throughout the instructions duty of decedents to exercise due care.

I. The first assignment raises an issue which has never been directly ruled upon by this court. It involves an interpretation of section 321.341, which we set out as far as it is applicable here:

"Whenever any person driving a vehicle approaches a railroad grade crossing and warning is given by automatic signal or

crossing gates * * * or otherwise of the immediate approach of a train, the driver of such vehicle shall stop within fifty feet but not less than ten feet from the nearest track of such railroad and shall not proceed until he can do so safely. * * *"

This was an open crossing. Except for the cross-buck already mentioned, there were no signals, crossing gates, or mechanical warnings. We have already referred to the evidence that the engineer gave a warning by both bell and whistle for some distance before reaching the crossing.

Plaintiff asked that the specification of negligence claiming he was contributorily negligent for failing to stop before reaching the crossing in violation of section 321.341 be withdrawn from the jury. Plaintiff argues that statute refers only to mechanical or automatic warnings given by signal installations *at the crossing* and does not embrace warnings given *from the train*. The trial court ruled against plaintiff and submitted the issue by an instruction based on section 321.341, to which proper and timely objection was made.

 The question reduces itself to a determination of the meaning of a single word—"otherwise"—as used in the statute. In resolving this issue we are obliged to give the language used its usual and ordinary meaning. We are also bound to give that construction to *all* of it. Rath v. Rath Packing Co., 257 Iowa 1277, 1288, 136 N.W.2d 410, 416 (1965); Monroe Community School District v. Marion County Board of Education, 251 Iowa 992, 996, 103 N.W.2d 746, 748 (1960).

 We cannot agree that the section deals only with warnings physically and permanently installed at the crossing site or those given by a flagman. The statute first refers to such warnings and then goes on to embrace warnings "otherwise" given.

We cannot say, as plaintiff would have us do, that the statutory language excludes a warning emitted by a sounding device attached to the train. If the word means anything—and we must assume it was inserted for a purpose—it is broad enough to include a warning given by train whistle or bell.

We have little authority to rely on except our own conclusion as to legislative intent; but we are satisfied the result reached reflects that intent. To hold otherwise would require us to delete the significant word "otherwise" from this statute. Of course, we cannot do that. See In the Matter of the Estate of DeVries, 203 N.W.2d 308 (Iowa 1972); Davenport Water Co. v. Iowa State Commerce Commission, 190 N.W.2d 583, 594, 595 (Iowa 1971).

We point out our conclusion is limited to the record now before us, where the only objection urged went to the argument that section 321.341 excludes from its terms warnings or signals given from an approaching train.

 No claim was made that the bell-and-whistle signal was insufficient to give "warning of the immediate approach of a train." This is what the statute requires.

Whether a signal meets such a test is dependent upon the particular circumstances of the case. Plaintiff perhaps was entitled to an amplification to "[tailor] the instruction to the facts of the case." Baker v. Wolfe, 164 N.W.2d 835, 839 (Iowa 1969); Gibbs v. Wilmeth, 261 Iowa 1015, 1021, 1022, 157 N.W.2d 93, 97 (1968). However, no such instruction was asked, and the charge as given was sufficient in the absence of a request that it be applied to the particular facts in controversy. In re Estate of Andrews, 245 Iowa 819, 829, 64 N.W.2d 261, 267 (1954); Daniels v. Bloomquist, 258 Iowa 301, 311, 138 N.W.2d 868, 874 (1965).

We hold the trial court was right in submitting this specification to the jury.

**II.** Plaintiff next urges us to reverse because the trial court erroneously withdrew the issue of defendant's lookout from the jury. Once more we agree with the trial court.

We have serious doubts whether the refusal to submit this specification of negligence, even if it were erroneous, could be prejudicial. The jury found defendants negligent. It is of no help to plaintiff's case to establish negligence on an additional ground; one is enough. However, plaintiff argues it is important because it could have influenced the jury's consideration of contributory negligence. Assuming this to be true—although not deciding that it is—we consider the assignment on its merits.

We have already summarized the evidence, and it is apparent there is nothing which would permit a finding defendants had failed to keep a proper lookout.

The engineer and brakeman both testified unequivocally that they first observed the Hoyt car when it was "on the bridge" —some 750 feet from the crossing. The train was then at least 1200 feet from the point of impact. Both said they observed the car without interruption until the crash. The engineer also said he put the train "on emergency" as soon as he saw Hoyt did not intend to stop.

Plaintiff argues the question of lookout should have been submitted despite this testimony because the jury could disbelieve what the train crew said. We concede that is true; but it wouldn't help plaintiff because there would still be no evidence of failure to keep a proper lookout.

This case is much like Strom v. Des Moines and Central Iowa Railway Co., 248 Iowa 1052, 1065, 82 N.W.2d 781, 788 (1957), where we held it was error to submit lookout under a record more favorable to plaintiff than is the one now before us. There we said:

We find no substantial evidence of this fourth charge [of failure to keep a prop-

er lookout.] * * * [T]wo of defendant's trainmen testify in substance they saw plaintiff as soon as the cars ahead of her turned off on [highway] 64. There is no evidence to the contrary. Until plaintiff continued north from the highway junction the trainmen had no way of knowing she would not turn onto 64 as the other automobiles did. There was no lack of care shown in keeping a lookout."

To the same effect see Simmons v. Chicago, Rock Island, and Pacific Railway Company, 217 Iowa 1277, 1279–1282, 252 N.W. 516, 517, 518 (1934).

We discussed lookout at length in Roberts v. Chicago and Northwestern Railway Company, 253 Iowa 646, 649–652, 113 N. W.2d 269, 270–272 (1962), a case which both parties cite. It is most helpful for its statement that "the peculiar facts and circumstances of the case being considered must always be taken into consideration." On the record before us, there is nothing, either by way of direct testimony or circumstantial evidence, upon which the trial court could have put this question to the jury. Adams v. Deur, 173 N.W.2d 100, 113 (Iowa 1969); Schneider v. Swaney Motor Co., 257 Iowa 1177, 1182, 136 N.W. 2d 338, 341, 342 (1965).

We find no merit in this assignment of error.

**III.** Plaintiff next complains because the trial court told the jury plaintiff must prove *both* defendants were negligent in order to recover. We agree this was error. While it is true negligence of the defendant-engineer would be imputable to the railroad, the converse is not true. There was evidence from which the jury could have held the railroad negligent in its failure to provide warning devices at the crossing. The engineer, of course, would have no obligation for that omission. But this has proved to be harmless. The jury *did* find both defendants liable in the verdict they returned for the son's estate. This, then, could not have been a factor in

the verdict against the driver's estate, and, though incorrect, the instruction is not reversible error.

IV. Plaintiff also objects that the instructions unduly and prejudicially emphasize plaintiff's obligation to exercise due care. Plaintiff argues the trial court virtually instructed the jury to find him negligent. Instructions should not give undue emphasis to any phase of the case. Even correct statements may then become reversible error. Andrews v. Struble, 178 N.W.2d 391, 400 (Iowa 1970). We have examined the instructions in their entirety. We find no merit in this complaint. The court fully and fairly presented the issues to the jury. Any repetition in stating the duties of the plaintiff or the elements necessary to find contributory negligence were no more than required for a clear presentation of the issues.

What we have said disposes of plaintiff's appeal, and we find the judgment in favor of defendant on the claim of Peary Hoyt, Jr. should be affirmed.

VI. One other matter remains. It is the appeal of defendant from the judgment for $35,000 in favor of the administrator of the Estate of Peary Edward Hoyt.

Only one error is relied on for reversal. Defendant says the trial court mistakenly excluded proffered evidence concerning the "exposure factor" at the crossing where the accident occurred. "Exposure factor" was described by witnesses as a formula used by some governmental regulatory agencies to determine if automatic signals should be installed by relating the number of cars using the road to the number of trains passing over the crossing. Defendant claims this was important because one specification of negligence charged it with failing to provide an automatic signal at a dangerous crossing.

The trial court rejected the evidence and, we think, correctly so. We do not find these witnesses (one was an engineer formerly employed by the railroad; the other was the county engineer of Jasper County) were "experts" qualified to tell the jury the interpretation which the governmental agencies would place on their rules under a specific set of circumstances.

The admission of expert testimony lies largely within the discretion of the trial court. We reverse only for abuse of discretion. Dougherty v. Boyken, 261 Iowa 602, 607, 155 N.W.2d 488, 491 (1968). We find no abuse of discretion here.

Since this is the only error urged, the judgment against defendants on the claim of Peary Edward Hoyt should also be affirmed.

Affirmed on both appeals.

All Justices concur except McCORMICK, J., MOORE, C. J., and REYNOLDSON, J.

UHLENHOPP, J., joins in Division I of the dissent.

McCORMICK, Justice (dissenting as to plaintiff's appeal).

I concur in the opinion except as to Division I and the result on plaintiff's appeal.

The issue is whether Code § 321.341 mandates a finding the driver of a vehicle is negligent in failing to stop at a railroad crossing upon a showing a train approaching the crossing gave a signal by whistle and bell. Resolution of the issue requires statutory interpretation.

In relevant part the statute provides:

"Whenever any person driving a vehicle approaches a railroad grade crossing and warning is given by automatic signal or crossing gates or a flagman or otherwise of the immediate approach of a train, the driver of such vehicle shall stop within fifty feet but not less than ten

feet from the nearest track of such railroad and shall not proceed until he can do so safely."

The majority upholds defendants' contention that the statutory words "or otherwise" comprehend signal by whistle and bell. Its reasoning violates basic rules of statutory interpretation and leads to the wrong result.

I. Our goal in statutory interpretation is to ascertain legislative intent as shown by what the legislature said. McKillip v. Zimmerman, 191 N.W.2d 706, 709 (Iowa 1971); rule 344(f)(13), R.C.P. The legislature has prescribed a principle of construction which is applicable here: "Words and phrases shall be construed according to the context and the approved usage of the language; but technical words and phrases, and such others as may have acquired a peculiar and appropriate meaning in law, shall be construed according to such meaning." § 4.1(2), The Code. The general words "or otherwise" have a peculiar and appropriate meaning in the context of § 321.341. That meaning is determined by considering them in the light of the doctrine of *ejusdem generis.*

The rule of *ejusdem generis* is that "where specific words *of the same nature* in a statute are followed by general words *the latter take their meaning from the specific words and comprehend only those things of the same kind as the specific ones.*" Federated Mutual Imp. & H. Ins. Co. v. Dunkelberger, 172 N.W.2d 137, 140 (Iowa 1969), and citations. The doctrine applies when five conditions are met: "(1) the statute contains an enumeration by specific words; (2) the members of the enumeration constitute a class; (3) the class is not exhausted by the enumeration; (4) a general term follows the enumeration; and (5) there is not clearly manifested an intent that the general term be given a broader meaning than the doctrine requires." 2 Sutherland, Statutory Construction, § 4910 at 400 (Third Ed.1943).

In this case the five conditions are satisfied. The statute contains an enumeration by specific words. Warnings "by automatic signal or crossing gates or a flagman" are included. They are each extraordinary devices located at railroad crossings to warn vehicles to stop because of approaching trains. Where crossings are more than ordinarily hazardous, additional signals of the nature enumerated in Code § 321.341 may be required. Wickman v. Illinois Central R. Co., 253 Iowa 912, 917, 114 N.W.2d 627, 629–630 (1962). In contrast, the statutory requirement of warning by whistle and bell establishes a minimum duty which must be met in every case. Russell v. Chicago, R. I. & P. R. Co., 249 Iowa 664, 668, 86 N.W.2d 843, 845–846 (1958); § 478.19, The Code. Thus, a warning by whistle and bell is an ordinary signal; a warning by a signal named in § 321.341 is extraordinary. The extraordinary signals in § 321.341 constitute a class.

The enumeration in § 321.341 does not exhaust the class. For example, extraordinary signals required at unusually hazardous crossings could conceivably include a device at the crossing which was not automatic such as a barricade, stop sign or watchman. The legislature did not purport to exhaust the class of extraordinary signals by enumerating the most common examples. Cf. Strom v. Des Moines & Central Iowa Ry. Co., 248 Iowa 1052, 1068–1069, 82 N.W.2d 781, 790–791 (1957) (more than ordinarily dangerous crossings require an additional signal "like gates, flashing lights, bell, gong, *or other device*") (italics supplied).

There is of course no question that the general term "or otherwise" follows the enumeration. Further, no intent is manifested that the general term be given a broader meaning than the doctrine of *ejusdem generis* requires. All conditions for applicability of the doctrine are met.

The general term must therefore be confined to the class and not interpreted to

enlarge it. The statutory minimum signal by whistle and bell is not in the same class as the extraordinary additional signals enumerated in § 321.341 and is therefore not embraced by the words "or otherwise."

There is nothing unusual about giving a restricted meaning to this general term. Hodgson v. Mountain & Gulf Oil Co., 297· F. 269, 272 (D.C.Wyo.1924) ("The ejusdem generis rule of statutory construction is that a 'clean-up' phrase of this character will include only things of a like or similar kind * * *."); 50 Am.Jur. Statutes § 249 at 246 ("[S]uch terms as * * * 'otherwise' * * * when preceded by a specific enumeration, are commonly given a restricted meaning, and limited to articles of the same nature as those previously described."); 82 C.J.S. Statutes § 332 at p. 662 ("The rule * * * has frequently been applied where such terms as * * * 'or otherwise' * * * follow an enumeration of particular classes, and where this occurs such words are to be read as 'other such like' and are construed to include only others of like kind or character.").

The majority strains so hard to give unrestricted meaning to the words "or otherwise" that it destroys the meaning of the specific words enumerated ahead of them. If the legislature intended the result reached by the majority it would have omitted enumeration of particular crossing signals and simply imposed the duty to stop a vehicle approaching a railroad crossing upon *any* warning of the immediate approach of a train. Cf. 2 Sutherland, Statutory Construction, § 4910 at 400–401 (Third Ed.1943). In imputing general meaning to the general words the majority has, contrary to the doctrine of *ejusdem generis*, vitiated the effect of the specific words.

The *ejusdem generis* rule instead gives effect to both the particular and the general words " 'by treating the particular words as indicting the class, and the general words as extending the provisions of the statute to everything embraced in that class, though not specifically named by the particular words.' " 2 Sutherland, Statutory Construction, § 4909 at 399 (Third Ed. 1943), quoting National Bank of Commerce v. Estate of Ripley, 161 Mo. 126, 131, 61 S.W. 587, 588 (1901).

II. In construing statutes we are also obliged to try to avoid unjust, unreasonable and absurd consequences. Harnack v. District Court of Woodbury County, 179 N. W.2d 356, 361 (Iowa 1970). The majority's interpretation has the anomalous effect of charging the driver of a vehicle with negligence per se in failing to respond to a warning, whether the warning is legally adequate or not. Violation of § 321.341 is negligence per se. Chicago, Rock Island & Pacific Railroad Co. v. Breckenridge, 333 F.2d 990, 995–996 (8 Cir. 1964). We discussed the basis of the doctrine of negligence per se and its application in analogous circumstances in Jorgensen v. Horton, 206 N.W.2d 100 (Iowa 1973) filed separately this date. Where the adequacy of a warning given is a question of fact on the issue of a defendant's negligence it cannot with consistency be converted to an adequate warning as a matter of law on the issue of a plaintiff's contributory negligence.

We have long held a driver is entitled to assume a railroad will comply with requirements of law in warning of the approach of a train. Evidence that required signals were not given is proper to be considered on the issue whether a vehicle driver exercised ordinary care for his own safety. Strom v. Des Moines & Central Iowa Ry. Co., *supra,* 248 Iowa at 1062–1064, 82 N.W.2d at 787–788 (1957); Gray v. Chicago, R. I. & P. Ry. Co., 160 Iowa 1, 11–12, 139 N.W. 934, 938 (1913). Yet the majority's interpretation destroys this concept where an inadequate signal is given. A railroad might be negligent in failing to warn the traveler by extraordinary signal rather than only the whistle and bell. Despite this negligence the traveler would be negligent as a matter of law in failing to heed the inadequate warning by whistle

and bell, taking from the traveler his right to have the jury determine in that situation whether he exercised reasonable care and nullifying his right to assume he would receive a proper signal.

This case illustrates the anomaly. A jury question was engendered as to whether the crossing was sufficiently hazardous to require extraordinary warnings such as by automatic device or flagman at the crossing. Since it was undisputed the only warning given was by cross buck and whistle and bell, the jury was instructed defendants would be negligent if it found the crossing to be unusually hazardous. At the very same time, trial court told the jury in a separate instruction plaintiff could not recover if Hoyt failed to stop after the train sounded a warning by whistle and bell. The interpretation given § 321.341 by the trial court had the effect of requiring the jury to find Hoyt contributorily negligent as a matter of law for failing to respond to a warning which it could find inadequate. It denied him his right to assume he would receive a proper signal. I do not think the legislature intended such an unjust, unreasonable and absurd result in enacting Code § 321.341.

This conclusion is supported by a related principle of interpretation. We assume the legislature knew the existing state of the law at the time of its enactment. Jahnke v. Incorporated City of Des Moines, 191 N.W.2d 780, 787 (Iowa 1971). On that basis we presume the legislature did not intend by its enactment to overturn long-established legal principles unless its intention to do so appears by express declaration or unmistakable implication. Ritter v. Dagel, 261 Iowa 870, 878–879, 156 N.W.2d 318, 323 (1968). Code § 321.341 is based upon a 1937 enactment, 47 G.A., ch. 134, § 366. At that time and since then, as shown by *Gray* and *Strom, supra,* we recognized a motor vehicle driver's right to assume a railroad will give a proper warning of the approach of a train as a relevant factor in assessing whether the driver exercised reasonable care for his own safe-

ty. As shown by Wickman v. Illinois Central R. Co., *supra,* we distinguished between ordinary and extraordinary signals in determining what would constitute a proper warning.

There is nothing in § 321.341 to suggest the legislature intended to eliminate the significance of this distinction as it affects a traveler's right to assume he will be given a proper signal. We are bound to presume it did not intend to overturn this legal principle by making it negligence per se for the traveler to fail to stop in response to a signal by whistle and bell where an additional signal is legally required.

Giving full consideration to the words "or otherwise" in context in the light of these applicable principles of statutory interpretation, I believe trial court erred in submitting the specification of Hoyt's negligence under § 321.341 to the jury.

I would reverse and remand for new trial on plaintiff's appeal.

MOORE, C. J., and REYNOLDSON, J., join this dissent and UHLENHOPP, J., joins Division I hereof.