**In re Gail A. LANGE, Debtor.**

**Bankruptcy No. 3–89–3734.**

United States Bankruptcy Court,
D. Minnesota,
Third Division.

Feb. 15, 1990.

**908**

George H. Smith, Minneapolis, Minn., for debtor.

Michael J. Iannacone, St. Paul, Minn., trustee.

## ORDER GRANTING TRUSTEE'S MOTION FOR TURNOVER OF PROPERTY

GREGORY F. KISHEL, Bankruptcy Judge.

This Chapter 7 case came on before the Court on February 5, 1990, for hearing on the Trustee's motion for turnover of certain assets. Trustee Michael J. Iannacone appeared on behalf of the bankruptcy estate. Debtor appeared personally and by her attorney, George H. Smith. Upon the moving and responsive documents, arguments of counsel, and the other files and records in this case, the Court makes the following order.

Debtor filed a voluntary petition for relief under Chapter 7 on October 4, 1989. She selected the exemptions available under 11 U.S.C. § 522(d), and used the full "wild card" exemption of 11 U.S.C. § 522(d)(5) to exempt all of her equity in a motor vehicle not exemptible under 11 U.S.C. § 522(d)(2) and $350.00 in value in her "[t]ax refund for 1988." The Trustee's

motion for turnover relates to two classes of assets.

*A.  1988 and 1989 Income Tax Returns and Refunds.*

When she filed her bankruptcy petition, Debtor had not yet filed her income tax returns for tax year 1988. She does not deny that she signed and filed those returns on or about December 9, 1989. The returns indicated refunds owing, of $456.16 from the State of Minnesota and of $859.72 from the Internal Revenue Service. Apparently anticipating a tax liability for tax year 1989, she directed the federal and state taxing authorities to apply a total of $650.00 from the refunds toward her 1989 liability. She has since received the resultant "net" 1988 state refund of $256.16, and has turned that over to the Trustee; she states that she will do the same with her "net" 1988 federal refund of $409.72.

■ The Trustee takes the position that Debtor had no right to exercise such control over property of her bankruptcy estate, and that she is personally liable to the estate for the difference between her "gross" entitlements to income tax refunds for tax year 1988 and the "net" refunds actually received. The Trustee's position is well-supported. Under the Bankruptcy act of 1898, the full amount of income tax refunds accrued but unpaid as of the date of a bankruptcy filing were property of the bankruptcy estate. *Kokoszka v. Belford,* 417 U.S. 642, 94 S.Ct. 2431, 41 L.Ed.2d 374 (1974), *rehrg. den.,* 419 U.S. 886, 95 S.Ct. 160, 42 L.Ed.2d 131 (1974); *Segal v. Rochelle,* 382 U.S. 375, 86 S.Ct. 511, 15 L.Ed.2d 428 (1966); *Gehrig v. Shreves,* 491 F.2d 668 (8th Cir.1974); *In re Jones,* 337 F.Supp. 620 (D.Minn.1971); *In re Buchholtz,* 259 F.Supp. 31 (D.Minn.1966). The same conclusion obtains under the Bankruptcy Code of 1978. *In re Barfknecht,* 15 B.R. 463, 464 (Bankr.D.Minn.1981). *See also, e.g., Turshen v. Chapman,* 823 F.2d 836 (4th Cir.1987); *In re Guerrero,* 30 B.R. 463 (N.D.Ind.1983).

As Debtor had not either filed for or received her 1988 refunds by the date in 1989 on which she filed for bankruptcy, her entitlement to receive them passed into her

bankruptcy estate, by operation of 11 U.S.C. § 541(a). There, subject to allowed claims of exemption, it was to be administered by the trustee for the benefit of her creditors. *In re Barfknecht,* 15 B.R. at 464. Debtor had a statutory duty to fully cooperate with the trustee in his administration, 11 U.S.C. § 521(3), and to surrender all property of the estate to him, 11 U.S.C. § 521(4). She had no right to unilaterally direct the application of a portion of the estate's property to her anticipated tax liability. To the extent that that liability gave rise to a claim allowable against her bankruptcy estate, the payment of that claim out of the 1988 refunds was properly to be accomplished through the Trustee's administration.[1] At best, Debtor's actions subverted the orderly administration of the estate; at worst, they diverted estate assets to satisfy a claim which was not even allowable against the estate.

Debtor is personally responsible to the estate for the consequences of her conduct. She has been allowed an exemption for her 1988 refunds, but only to the extent of the sum of $350.00. She would have received this sum back from the Trustee, had she followed the proper procedure of applying for the refunds, receiving her full 1988 entitlements, and then turning them over to the Trustee for administration. In the interests of a simple and expedited resolution, the Court will order Debtor to make the estate whole for the $300.00 in refunds over which she had no claim of right. It is immaterial that, at least from a layman's perspective, Debtor ultimately may have to "pay the same debt twice." *Turshen v. Chapman,* 823 F.2d at 838–39. Debtor is also obligated to turn any refunds for tax year 1989 over to the Trustee; under the authorities cited *supra,* a pro rata share of those refunds will be property of the estate. See also *In re Dlugopolski,* 67 B.R. 122 (Bankr.D.Kan.1986).

### B. Funds on Deposit in Checking Account.

■ Debtor does not dispute that the balance on deposit in her person checking account at Firstar St. Anthony Bank as of her bankruptcy filing was $1,236.60. As of that date, three outstanding checks, all to the Kendrick Company, her prospective landlord, had not been presented to her bank for payment. The total value of these checks was $815.00; they were presented and paid on October 5, 1989, one day after the bankruptcy filing. Debtor did not claim an exemption in any of the funds on deposit, whether subject to claim under the outstanding checks or not.[2] The Trustee takes the position that the entire balance on deposit as of Debtor's bankruptcy filing—$1,236.60—was property of the bankruptcy estate for which Debtor is accountable to him, notwithstanding the Bank's post-petition acceptance and payment of the checks which Debtor tendered to the payee before her bankruptcy filing.

Again, the Trustee's argument is well-founded in law. Under Article 3 of the Uniform Commercial Code as enacted in Minnesota,

A check or other draft does not of itself operate as an assignment of any funds in the hands of the drawee available for its payment, and the drawee is not liable on the instrument until he accepts it.

MINN.STAT. § 336.3–409(1). Acceptance by a drawee is defined as follows:

Acceptance is the drawee's signed engagement to honor the draft as presented. It must be written on the draft, and may consist of his signature alone. It becomes operative when completed by delivery or notification.

MINN.STAT. § 336.3–410(1). The import of these provisions is that the issuance of a

---

**1.** The Court need not address the issue of whether Debtor's possible 1989 tax liabilities, or any portion of them, would have been or will be allowable claims against the estate, and expresses no opinion on that issue in this order. 11 U.S.C. §§ 502(i) and 507(a)(7) might have operated in conjunction to validate a claim against the estate for 1989 income tax liability, had Debtor elected a "short-year" tax filing status and terminated her tax year 1989 as of the date of her bankruptcy filing. Whether they do, given that she apparently did not, is not before the Court.

**2.** Given her previous election under the § 522(d)(5) "wild card" exemption, she could not have done so in any event.

check does not operate as an immediate assignment of funds in an account; the funds remain subject to third-party claims until the draft is accepted by the drawee, and the transfer of funds *as to the payee* is not complete until the drawee accepts. *In re Ramy Seed Co.*, 57 B.R. 425, 429 (Bankr.D.Minn.1985); *In re Bellanca Aircraft Corp.*, 56 B.R. 339, 382 (Bankr.D. Minn.1985), *rev'd in part on other grounds*, 850 F.2d 1275 (8th Cir.1988). Thus, the transfer of funds represented by a check tendered by a debtor in bankruptcy takes place upon acceptance and payment by the drawee bank. *Olsen–Frankman Livestock Marketing Serv., Inc. v. Citizens Nat'l Bank*, 4 B.R. 809, 812–13 (D.Minn. 1980). Here, that transfer took place *after* Debtor's bankruptcy filing. As such, it constituted an unauthorized transfer of funds which had already passed into the bankruptcy estate upon Debtor's bankruptcy filing by operation of 11 U.S.C. § 541(a).[3]

This result is compelled, regardless of the lack of evidence that Debtor intended to deprive the estate of these funds and, unfortunately, regardless of the temporary hardship which it may work.[4] Even though the funds were subject to transfer to the landlord under the outstanding checks, that transfer was not consummated as of the date of Debtor's bankruptcy filing; thus, the funds actually on deposit, which were fully subject to Debtor's control on that date, became property of Debtor's bankruptcy estate. *Compare In re McWhorter*, 37 B.R. 742 (Bankr.D.S.C. 1984) and *In re Davis*, 35 B.R. 795 (Bankr. W.D.Wa.1983). Thus, Debtor must account to the estate for the full sum of $1,236.50.

IT IS THEREFORE ORDERED:

1. That, immediately upon her receipt thereof, Debtor shall turn over to the Trustee the check representing her federal income tax refund for tax year 1988.

2. That, to the extent she has not yet done so, Debtor shall promptly prepare and file her 1989 federal and state income tax returns, and immediately upon filing shall turn over a copy of both returns to the Trustee.

3. That Debtor shall turn over to the Trustee all checks received by her as state and federal income tax refunds for tax year 1989, immediately upon her receipt thereof.

4. That, no later than *March 16, 1990*, Debtor shall turn over to the Trustee the following sums:

    a. $300.00, representing the non-exempt balance of her 1988 state and federal income tax refunds after turnover of the check described in Term 1 of this order;

    b. The sum of $1,236.60, representing the balance of funds in her account at Firstar St. Anthony Bank as of the date of her bankruptcy filing; or, that portion of that amount yet unpaid if Debtor has already turned over to the Trustee a portion of those funds which were actually on deposit as of her bankruptcy filing on account of the estate's claim to those funds.

---

**3.** Debtor's counsel cites *In re Andrews' Estate*, 245 Ia. 819, 64 N.W.2d 261 (1954), to support his argument that the $815.00 was fully transferred to the landlord when Debtor passed physical possession of the checks. The citation is inapposite for at least two reasons: 1. It relies on an Iowa state statute as authority, not the Minnesota law which necessarily governs this case; 2. That Iowa statute was enacted before the drafting and adoption of the Uniform Commercial Code, which substantially modified many aspects of the prior law of negotiable instruments to conform it to modern commercial practice.

**4.** It cannot be denied that this decision will have some impact on Debtor in the short term, though the relative "fairness" of that result is certainly open to debate. The funds which passed through the negotiation of the checks were applied to a security deposit and first month's rent for Debtor's tenancy at a new apartment. That tenancy apparently commenced in October, 1989; thus, Debtor utilized funds of the bankruptcy estate for a benefit which she enjoyed after her bankruptcy filing. At least from a gut-level analysis, such expenses should be chargeable to and paid from post-petition income.