MURIEL KURTZ, Receiver of PIONEER FINANCE CORPORATION,
Appellant, v. HUMBOLDT TRUST & SAVINGS BANK, Appellee.

No. 45904.

JUNE 16, 1942.

Maher & Mullen, for appellant.

B. J. Price, Philip C. Lovrien, and Franklin Jaqua, for
appellee.

GARFIELD, J.— The Pioneer Finance Corporation was
engaged in financing the purchase of automobiles and some other
personalty, with its principal place of business at Fort Dodge.
Jay M. Wiggins was its managing officer from 1936 until May 1,
1939, when the corporation ceased doing business and turned
over its books and assets to a trustee. In January 1940, the dis-
trict court of Webster county appointed plaintiff receiver for
the defunct corporation. Defendant is a bank at Humboldt with
which the Pioneer did a large part of its banking business.

An audit was to be made of the Pioneer books as of Novem-

ber 30, 1938. At that time one Pioneer asset was $5,000 in stock of a Webster City automobile concern, which Wiggins did not want shown on the audit. On November 30, 1938, Wiggins borrowed $5,000 from defendant bank on his individual note, furnishing certain collateral owned by him. At Wiggins' request, Campbell, defendant's cashier, who conducted the transaction for the bank, deposited the $5,000 in the checking account of the Pioneer in defendant bank. Both Wiggins and Campbell testified that the purpose of the loan was not explained to Campbell.

After completing the transaction at the bank, Wiggins withdrew the Webster City automobile company stock from the Pioneer assets, so that it was not shown on the audit of November 30th. Wiggins' note to the bank was paid by a check for $5,001 on the Pioneer account in defendant bank, dated December 1, 1938, canceled and charged to Pioneer's account by the bank on December 8th. Wiggins, who lived in Fort Dodge, testified that he wrote the check on December 1st, and took it to defendant bank on his first trip to Humboldt after that date. The check for $5,001 was not entered on the corresponding stub in the company's checkbook, but a penciled cross mark appeared on the stub.

Wiggins conducted substantially all the Pioneer's business with defendant and other banks. Campbell, defendant's cashier, was elected a director of Pioneer on February 10, 1938, and appeared as such on the records of the company until it ceased functioning on May 1, 1939. Campbell and Wiggins both testified, however, that the former told Wiggins he could not serve as a director because his bank was loaning money to Pioneer. Campbell did attend some directors meetings, however, although he claimed to have done so largely as a representative of the bank.

From November 30, 1938, until the company ceased functioning five months later, defendant sent monthly statements to Pioneer showing its dealings with the bank, accompanied by canceled vouchers. Wiggins testified, however, that these statements were never examined by any committee of the board of directors, and there was no evidence that any officer or director other than Wiggins had any knowledge that the company's check was used to pay Wiggins' note.

Wiggins testified that after the transaction with defendant

was completed and the note was paid, the Webster City stock found "its way back into the assets of" his company. The evidence does not show just when the stock was returned, however.

By agreement the case was tried in equity although it was started at law. The trial court found that defendant was not liable. The court stated in support of its decision that the Pioneer company was in no way harmed by the transaction in question and there is no equity in the claim of the receivership. Plaintiff has appealed. We affirm the trial court.

Appellant contends that where an officer of a corporation withdraws its funds from a bank to pay his individual debt to the bank, the latter, having knowledge or notice thereof, must repay such money to the corporation. Appellee concedes that the law is as appellant claims but contends, in effect, that looking to the substance of this entire transaction it was a temporary loan from the bank to Wiggins for the benefit of the Pioneer company, and it was not improper to pay the loan out of the company account.

Appellant relies upon Brannen v. State Exch. Bk., 190 Iowa 630, 180 N. W. 886, and some other authorities. In the Brannen case an agent, with the complete knowledge and at the insistence of the bank's cashier, wrongfully applied his principal's deposit in payment of the agent's individual debt to the bank. In an action by the principal against the bank, the latter was held liable. We think the facts of the present controversy distinguish it from the authorities upon which appellant relies.

This cause is before us in equity. It is a maxim which has been frequently stated and applied that equity regards substance rather than form. In applying this maxim, technicalities will be disregarded. 30 C.J.S. 513, Equity, section 107; 19 Am. Jur. 317, section 459. It is our duty here to look behind the form to the substance of Wiggins' transaction with appellee.

It appears that Wiggins was permitted by the Pioneer corporation to have almost unlimited control and management of the corporate affairs. Of course it is true, as appellant argues, that Wiggins was not authorized to misappropriate the corporation's bank account or other assets. In this instance he pledged his individual credit to obtain a temporary loan from appellee

for the benefit of his company. It is true, as appellant insists, that the loan was made to Wiggins individually. But the proceeds of the loan went directly to the corporation and were deposited in its checking account. Wiggins withdrew the Webster City stock from the corporate assets. Subsequently this stock was returned to the corporation. Within a few days after the loan from appellee was procured, the amount of money loaned, plus $1.00 was repaid to the bank out of the same account in which the proceeds had been deposited. As a result of the entire transaction, there was no change in the financial condition of the Pioneer. The corporation, its stockholders and creditors, suffered no loss. Appellant, as receiver, has no greater rights against appellee than the Pioneer corporation had prior to receivership. 19 C.J.S. 1247, Corporations, section 1515. Since the corporation suffered no ultimate loss, there can be no recovery against appellee. See Community Sav. Bank v. Gaughen, 228 Iowa 18, 32, 289 N. W. 727; Independent Consol. Sch. Dist. v. Crawford County Bank, 232 Iowa —, 3 N. W. 2d 175, 176; Fidelity & Deposit Co. v. Aberdeen Nat. Bk. & Tr. Co., 8 Cir., S. D., 124 F. 2d 973. In each of the cited cases recovery against a bank was denied because no loss or damage had resulted to the principal from the agent's dealings with the bank.

We agree with the trial court that to impose liability upon appellee would be inequitable. No rule of law requires such a decision. The net result of permitting appellant to recover would be to augment, rather than restore, the assets of the Pioneer company and to take from appellee an amount to which it has a stronger equitable claim than appellant.

Appellant concedes in argument that she would have no case if the $5,000 had been placed on special deposit to provide for the payment of Wiggins' note. In such event, the **withdrawal of** the fund would merely have fulfilled the purpose for which the deposit was made. While it is doubtless true the deposit was general and not special, we think the rights of the parties in this suit are not different than if a special deposit had been made.

If the $5,000, even though deposited in the Pioneer account, belonged to Wiggins, the payment of his note by this withdrawal would be proper. There are many authorities to the effect that money only prima facie belongs to the person in whose name it

is deposited and may be shown to belong to another to whom it may rightfully be paid. 9 C.J.S. 593, 597, Banks and Banking, sections 285, 287; 7 Am. Jur. 289, section 413; Andrew v. Helmer & Gortner State Bk., 216 Iowa 777, 249 N. W. 276; Staton v. Vernon, 209 Iowa 1123, 1126, 229 N. W. 763, 67 A.L.R. 1200. Even though these authorities are not strictly in point they are somewhat analogous. While Wiggins may not have been the owner of the money deposited to the Pioneer account, payment of the note out of that account, under the facts and circumstances here, cannot be regarded as a misappropriation of corporate funds which would render appellee liable.

It goes without saying that we strongly disapprove the conduct of Wiggins in juggling the assets of his corporation for the purpose of the audit. But the improper motive of Wiggins does not render appellee liable.

The decree is—Affirmed.

BLISS, C. J., and STIGER, SAGER, OLIVER, HALE, MILLER, and WENNERSTRUM, JJ., concur.