146 A.2d 757 (1958)
Robert HEILBRUNN, Harriett Heilbrunn and Mathilda Heilbrunn, copartners trading as Heilbrunn & Co., Jacques Coe, Fred Gutenstein, Joseph E. Sullivan, Jerome S. Weinberg (general partners), and Florence Coe (limited partner), copartners trading as Jacques Coe & Co., Plaintiffs,
v.
SUN CHEMICAL CORPORATION, a Delaware corporation, Ansbacher-Siegle Corporation, a New York Corporation, and Norman E. Alexander, Defendants.
Court of Chancery of Delaware, New Castle.
December 5, 1958.
Irving Morris, Wilmington, and Edward Lee, New York City, for plaintiffs.
Caleb S. Layton, of Richards, Layton & Finger, Wilmington, and Manning, Hollinger & Shea, New York City, for defendants.
MARVEL, Vice Chancellor.
Plaintiffs, who are stockholders of Sun Chemical Corporation, bring this action for the entry of a declaratory judgment to the effect that certain acts involving the acquisition by Sun Chemical Corporation of all of the assets of the defendant, Ansbacher-Siegle Corporation, the stock of which was owned directly or indirectly by *758 the defendant, Norman E. Alexander, was in fact an illegal merger not approved by the statutorily required two-thirds vote of Sun's stockholders. Plaintiffs seek rescission of the transaction complained of, the return of the consideration paid for Ansbacher's assets in exchange for such assets, the relieving of Sun of responsibility for its purported limited assumption of Ansbacher's liabilities and a further finding that the transaction be found to be not in the best interests of Sun and its stockholders but rather illegally brought about for the benefit of the defendant, Alexander. Injunctive relief was also prayed for against the consummation of the acts complained of (although such relief was not actively sought) and there is a further prayer for cancellation of stock issued by Sun for the purpose of carrying out the transaction and for other appropriate relief.
Defendants, having moved to dismiss on the ground that the complaint fails to state a claim upon which relief can be granted, take the position that the transaction under attack was simply a purchase of Ansbacher's assets by Sun made pursuant to authority found in Article IX, § 3 of the Delaware Constitution, Del.C.Ann., and § 152[1] of Title 8 Del.C. consummated after approval by Sun's stockholders at a meeting at which the Sun stock owned or controlled by the defendant, Alexander, was not voted. Defendants contend that the Delaware Corporation Law provides several procedures for altering capital structure, and that in this instance § 152 was utilized rather than one or more of the other sections which govern the carrying out of corporate reorganizations. Compare Havender v. Federal United Corporation, 24 Del.Ch. 318, 11 A.2d 331.
Plaintiffs' basic premise, which was forcefully brought to the attention of Sun's management prior to the November 29, 1957 stockholders' meeting at which the transaction complained of was approved, is that they have been deprived of clear rights granted them under the Delaware merger statutes and that they cannot be legally forced to "exchange" their stock and its rights for rights in what they claim is in fact a "resulting" corporation. In a second cause of action plaintiffs contend that the transaction complained of was in any event improperly foisted on Sun by Alexander for his own benefit through his ownership and control of a substantial amount of Sun stock.
The acquisition plan here complained of was reported to Sun's stockholders in a document of November 8, 1957 consisting of a committee proposal, a proxy statement with attached financial statements, and a contract of October 2, 1957 between Sun and Ansbacher-Siegle under the terms of which Sun, a manufacturer of ink, agreed to purchase the assets (including trade secrets, inventions, good will, going value concern and corporate name or any parts thereof) of Ansbacher, a manufacturer of ink pigments. The contract was submitted for stockholder action after approval by the board which recommended that the purchase be approved on the theory that the transfer to Sun of all of Ansbacher's assets subject to its liabilities (provided in any event the net assets to be acquired be not less than $600,000 on the date of closing) a going pigment plan would thereby be acquired and the need for renovating Sun's own pigment plan thereby obviated. In exchange for these assets Sun proposed to issue and deliver to Ansbacher 225,000 *759 shares of common stock, 56,250 shares of which were to be deposited in escrow.
The proxy statement pointed out that the entry of the assets of Ansbacher on the books of Sun at the market value of the consideration to be paid for such assets as of November 29, 1957 would reduce the book value of Sun's stock as of December 31, 1956 from $12.32 per share to $11.97 per share, and that Alexander, who was in effect Ansbacher's sole stockholder as well as Sun's president, would as a result of the proposed acquisition then be the beneficial owner of a total of 257,950 shares of Sun upon distribution by Ansbacher of its Sun stock. It was also disclosed to stockholders that Ansbacher had agreed to make up any deficit in its net working capital should it be less than the agreed limit of $600,000 as of November 30, 1957 and that key personnel of Ansbacher were to be employed by Sun. The proxy statement went on to state that Ansbacher proposed to dissolve[2] as soon as possible after completion of the transaction, that Sun in effect had undertaken to carry on Ansbacher's former business, and gave an estimate of the effect of the proposed acquisition on Sun's net profits.
Plaintiffs submit that the transaction thus described and submitted to the stockholders of each corporation constituted a complete integration of Ansbacher into Sun involving a distribution of Sun stock to Ansbacher's stockholders and a consequent dissolution of Ansbacher, and that the cumulative effect of these steps is such as to have resulted in a merger violative of Delaware law, Drug Inc., v. Hunt, 5 W.W.Harr. 339, 168 A. 87. Compare Marks v. Autocar Co., D.C.E.D.Pa., 153 F.Supp. 768, Lauman v. Lebanon Valley R. Co., 30 Pa. 42. Plaintiffs insist that the mere formalism whereby the consideration for the purchase of Ansbacher was to be paid to that corporation and then to its stockholders rather than directly to the stockholders of Ansbacher cannot alter the true character of the transaction.
The vice latent in a corporate merger carried out in disregard of statutory rules is that the rights of creditors or stockholders may be thereby impaired. Courts are prompt to protect such rights when the existence of the corporation to which creditors look for payment and on which stockholders rely for a fair and proper handling of their investment is to be extinguished in a transaction which fails to comply with applicable merger statutes. In the case at bar, however, is there in fact any real impairment of the rights of either creditors or dissenting stockholders? Compare Fidanque v. American Maracaibo Co., 33 Del.Ch. 262, 92 A.2d 311; Drug, Inc., v. Hunt, supra, and Finch v. Warrior Cement Corporation, 16 Del.Ch. 44, 141 A. 54.
Were this an action brought by a creditor or stockholder of Ansbacher (Marks v. Autocar Co., supra) or a case in which the purchasing corporation was in effect to be "acquired" by a "seller" whose business was totally alien to the "buyer's" (Farris v. Glen Alden Corporation, 393 Pa. 427, 143 A.2d 25) plaintiffs' arguments would carry greater conviction.
As matters stand, however, plaintiffs as owners of 1,000 shares of Sun find themselves in a position where prior to the acquisition in question each of their shares represented a 1/1,196,283 interest in Sun's assets after payment of preferred stock claims, while now such interest has been reduced to 1/1,421,283. The voting influence of each share of stock has been similarly affected. Plaintiffs insist that as a result of the transaction they have lost their interest in Sun and received instead an *760 interest in a combined corporation. I am unable to agree with this contention. Plaintiffs remain Sun stockholders, and, in my opinion, may not complain of a corporate purchase made in conformity with Delaware statutory authority unless such transaction is fraudulent as having been carried out for a grossly inadequate consideration or otherwise made in bad faith. Plaintiffs are in substance objecting to the acquisition of corporate property by means of the issuance of stock.
The complaint on this line of attack merely alleges that the purchase was made for the benefit of Alexander and not for the benefit of Sun and its stockholders and was "tainted with self-interest". The complaint does not clearly allege that the consideration paid for the Ansbacher assets was so excessive as to make the transaction fraudulent or disclose exactly how Alexander controls Sun, however, it does appear from the proxy statement attached to the complaint that at least two and perhaps three of the committee of five directors appointed to make a recommendation on the proposed purchase had business dealings with Mr. Alexander, that a firm engaged by the committee to evaluate the proposed purchase apparently reported that earnings of Ansbacher might be insufficient to warrant the price proposed to be paid by Sun, and that the proposed purchase would result in increasing Mr. Alexander's beneficial interest in Sun stock from 32,950 shares to 257,950 shares. Plaintiffs contend that this information and other data presented to stockholders disclose an unfair transaction, approval of which was fostered through management control of "stockholder voting". Alternatively, plaintiffs take the position that the information given stockholders was so garbled as to make it difficult if not impossible for stockholders clearly to understand the actual nature of the transaction for which their approval was sought. Furthermore, plaintiffs argue that the proxy statement is vague as to the conduct of negotiations preceding the fixing of the price to be paid Ansbacher and does not disclose whether or not Alexander participated in such discussions.
I conclude that while the second cause of action, which is non-derivative in form, is defective, nonetheless, because the defendant, Alexander, who is president as well as a stockholder of Sun, clearly had a compelling fiduciary duty to Sun's stockholders in a transaction in which he stood to benefit personally, such cause of action should not be summarily dismissed for failure to state a claim upon which relief can be granted. Compare Gerlach v. Gillam, Del.Ch., 139 A.2d 591.
On notice, an order may be submitted granting defendants' motion to dismiss as to plaintiffs' first cause of action and denying such motion as to plaintiffs' second cause of action.
NOTES
[1] "Subscriptions to, or the purchase price of, the capital stock of any corporation organized under this Code or any other law of this State may be paid for, wholly or partly, by cash, by labor done, by personal property, or by real property or leases thereof; and the stock so issued shall be declared and taken to be full paid stock and not liable to any further call, nor shall the holder thereof be liable for any further payments under the provisions of this chapter. In the absence of actual fraud in the transaction, the judgment of the directors, as to the value of such labor, property, real estate or leases thereof, shall be conclusive."
[2] The contract provision providing for the proposed liquidation of Ansbacher appears to have been adopted for the purpose of complying with the provisions of § 368 of the Internal Revenue Code, 26 U.S.C.A. § 368, which permits a corporation to avoid a capital gains tax if it liquidates within twelve months after its assets are sold and distributed in complete liquidation.