150 A.2d 755 (1959)
Robert HEILBRUNN, Harriet Heilbrunn and Mathilda Heilbrunn, co-partners trading as Heilbrunn & Co., Jacques Coe, Fred Gutenstein, Joseph E. Sullivan, Jerome S. Weinberg (general partners, and Florence Coe (limited partner), co-partners trading as Jacques Coe & Co., Appellants,
v.
SUN CHEMICAL CORPORATION, a Delaware corporation, Ansbacher-Siegle Corporation, a New York corporation and Norman E. Alexander, Appellees.
Supreme Court of Delaware.
May 5, 1959.
Irving Morris (of Cohen & Morris), Wilmington, and Edward Lee, New York City, for appellants.
Caleb S. Layton and Rodney M. Layton (of Richards, Layton & Finger), Wilmington, and Bruce A. Hecker (of Manning, Hollinger & Shea), New York City, for appellees.
SOUTHERLAND, C. J., and WOLCOTT and BRAMHALL, JJ., sitting.
SOUTHERLAND, Chief Justice.
This suit is brought by stockholders of Sun Chemical Corporation, a Delaware corporation, against Ansbacher-Siegle Corporation, a New York corporation, and Norman E. Alexander, President of Sun and owner of Ansbacher. Plaintiffs attack the validity of the purchase by Sun of all the assets of Ansbacker. The complaint states two grounds or causes of action: (1) that the transaction constituted *756 a de facto merger and is unlawful since the merger provisions of the Delaware law were not complied with; and (2) that the transaction "was tainted with self-interest", i. e., is unfair to Sun stockholders.
Defendants moved to dismiss the complaint. The Vice Chancellor held that the transaction was one of purchase and sale and not a merger. He dismissed the complaint as to the first cause of action. He denied the motion to dismiss the second cause of action.
Plaintiffs appeal, and contend here, as they did below, that the transaction was by its nature a de facto merger.
Although the transaction has been consummated, it is convenient to state many of the facts as they appeared on November 8, 1957, when the proxy statement was sent to the Sun stockholders. They are as follows:
Sun is engaged in the business of manufacturing ink and pigments for ink. It owns a plant at Harrison, New Jersey. It has outstanding 19,000 shares of preferred stock and 1,196,283 shares of common stock. Its balance sheet shows total assets of over $24,000,000. The defendant Alexander is its president, and owns about 2.8 per cent of the common shares.
Ansbacher is engaged in the manufacture of organic pigments. Its products are used in the manufacture of ink, cosmetics, textiles, plastics, and other similar products. Its balance sheet shows total assets of about $1,786,000. The defendant Alexander is its sole beneficial stockholder.
In April of 1956 Alexander, then the owner of about 7,000 shares of Sun, suggested to Sun's then president the possible acquisition of Ansbacher by Sun. Nothing came of the suggestion.
In January, 1957, Alexander advised the Sun management that he and five friends and associates owned substantial amounts of Sun shares, and requested representation on the board. Negotiations followed, as a result of which five of the Sun directors resigned, and Alexander and four others named by him were elected to Sun's board. Alexander became president.
In June, 1957, a special committee of Sun's board was appointed to consider whether Sun should own and operate a pigment plant, and if so whether it should rehabilitate its Harrison plant or should acquire or build a new plant. The committee found that Sun's Harrison plant was old, inefficient, and incapable of expansion because of its location. It recommended the acquisition of Ansbacher.
An agreement for the purchase was entered into between Sun and Ansbacher on October 2, 1957. It provides, among other things, as follows:
1. Ansbacher will assign and convey to Sun all of Ansbacher's assets and property of every kind, tangible and intangible; and will grant to Sun the use of its name or any part thereof.
2. Sun will assume all of Ansbacher's liabilities, subject to a covenant that Ansbacher's working capital shall be at least $600,000.
3. Sun will issue to Ansbacher 225,000 shares of its common stock.
4. As soon as possible after the closing of the transaction Ansbacher will dissolve and distribute to its shareholders, pro rata, the shares of the common stock of Sun (subject to an escrow agreement relating to one-fourth of the shares).
5. Ansbacher will use its best efforts to persuade its employees to become employees of Sun.
6. Sun's obligation to consummate the transaction is subject to approval by the holders of a majority of Sun's voting stock, exclusive of shares owned or controlled by Alexander, at a special stockholders' meeting to be thereafter called.
The agreement was approved by the boards of directors of both corporations. *757 A special meeting of Sun's stockholders was called for November 29, 1957. The proxy statement set forth detailed information with respect to the plan of acquisition.
On November 6, 1957, a ruling was obtained from the Commissioner of Internal Revenue that the transaction would constitute a tax-free reorganization under the applicable provisions of the Internal Revenue Code.
Prior to the meeting plaintiffs filed written objections to the transaction, and gave notice of their intention to take legal action.
The approval of the necessary majority of Sun's stockholders was obtained, and the transaction was consummated.
Plaintiffs contend that although the transaction is in form a sale of assets of Ansbacher it is in substance and effect a merger, and that it is unlawful because, the merger statute not having been complied with, plaintiffs have been deprived of their right of appraisal and have also suffered financial injury.
The argument that the result of this transaction is substantially the same as the result that would have followed a merger may be readily accepted. As plaintiffs correctly say, the Ansbacher enterprise is continued in altered form as a part of Sun. This is ordinarily a typical characteristic of a merger. Sterling v. Mayflower Hotel Corp., 33 Del. 293, 303, 93 A.2d 107, 38 A. L.R.2d 425. Moreover the plan of reorganization requires the dissolution of Ansbacher and the distribution to its stockholders of the Sun stock received by it for the assets. As a part of the plan, the Ansbacher stockholders are compelled to receive Sun stock. From the viewpoint of Ansbacher, the result is the same as if Ansbacher had formally merged into Sun.
This result is made possible, of course, by the overlapping scope of the merger statute and the statute authorizing the sale of all the corporate assets. This possibility of overlapping was noticed in our opinion in the Mayflower case.
There is nothing new about such a result. For many years drafters of plans of corporate reorganization have increasingly resorted to the use of the sale-of-assets method in preference to the method by merger. Historically at least, there were reasons for this quite apart from the avoidance of the appraisal right given to stockholders dissenting from a merger. For example, if an interstate merger was not authorized by the statute, a sale of assets could be resorted to. See Ballantine, Corporations, § 663; and Hills, "Consolidation of Corporations by Sale of Assets", 19 Cal.L.Rev. 349.
No Delaware case has held that this use of the sale-of-assets statute is improper, although Delaware does not grant appraisal rights to a stockholder dissenting from the sale. Indeed, Argenbright v. Phoenix Finance Co., 21 Del.Ch. 288, 187 A. 124, and Finch v. Warrior Cement Corp., 16 Del.Ch. 44, 141 A. 54, contain language indicating the contrary. Those cases are, however, distinguishable on the facts, because dissolution of the seller and distribution of the stock of the purchaser were not required as a part of the sale in either case.
Whether, under Delaware law, a stockholder of the selling corporation could, in such a case as the instant one, obtain relief in equity on the theory of a de facto merger is a question we do not reach. What is before us is an attempt to apply the theory for the benefit of stockholders of the purchasing corporation, which may well raise, as it does here, a very different question. The only Delaware case in which such an attempt was made is that of Fidanque v. American Maracaibo Co., 33 Del.Ch. 262, 92 A.2d 311. It involved only an exchange of stock and is not in point here.
The doctrine of de facto merger has been recognized in Delaware. It has been *758 invoked in cases of sales of assets for the protection of creditors or stockholders who have suffered an injury by reason of failure to comply with the statute governing such sales. Drug, Inc. v. Hunt, 35 Del. 339, 168 A. 87 (creditor of selling corporation); and cf. Finch v. Warrior Cement Corp., supra (stockholder of selling corporation). The contention that it should be applied to cases of the kind here involved depends for its force upon the proposition that the stockholder has been forced against his will to accept a new investment in an enterprise foreign to that of which he was a part, and that his right to an appraisal under the merger statute has been circumvented. See Lauman v. Lebanon Valley Railroad Co., 30 Pa. 42 (decided on common law principles); and Marks v. Autocar Co., D.C., 153 F.Supp. 768.
Our Court of Chancery has said that the appraisal right is given to the stockholder in compensation for his former right at common law to prevent a merger. Chicago Corporation v. Munds, 20 Del.Ch. 142, 149, 172 A. 452. By the use of the sale-of-assets method of reorganization, it is contended, he has been unjustly deprived of this right.
As before stated, we do not reach this question, because we fail to see how any injury has been inflicted upon the Sun stockholders. Their corporation has simply acquired property and paid for it in shares of stock. The business of Sun will go on as before, with additional assets. The Sun stockholder is not forced to accept stock in another corporation. Nor has the reorganization changed the essential nature of the enterprise of the purchasing corporation, as in Farris v. Glen Alden Corporation, 393 Pa. 427, 143 A.2d 25.
Nor is it a case in which the seller can be said to have acquired the purchaser. Sun's net worth is ten times that of Ansbacher. Sun has simply absorbed another company's assets which are needed in its own business.
The diminution in the proportional voting strength of the Sun stockholder is not a ground of complaint. Such a consequence necessarily follows any issuance of stock to acquire property.
Plaintiffs make the further point that their proportional interest in the assets has also been diminished. This is, in effect, a charge that the terms of the acquisition are unfair to the Sun minority. Thus it is said that Ansbacher's net worth is about $1,600,000, and the issuance to Ansbacher of 225,000 shares of Sun stock of the market value of $10.125 a share results in the payment by Sun of a grossly excessive price and in the unjust enrichment of Alexander. It is also said that the report of the committee of Sun's directors admits that the earnings of Ansbacher do not justify the price paid.
These are arguments appropriate to the second cause of action, which the Vice Chancellor refused to dismiss. The legal power to authorize the transaction is one thing. The fairness of its terms and conditions is another. Allied Chemical & Dye Corporation v. Steel & Tube Co., 14 Del.Ch. 64, 122 A. 142. Only the first issue is before us. Plaintiffs are in no way foreclosed from pressing the above contentions when the second cause of action is tried.
With respect to the right of Sun stockholders to raise the question of de facto merger, plaintiffs' contention comes in effect to this: that a merger statute protects the stockholders of all merging or consolidating corporations; and if a stockholder of a selling corporation is entitled to invoke the doctrine of de facto merger, it follows that a stockholder of the purchasing corporation is likewise entitled to do so. This is to say that if the stockholder of the selling corporation suffers injury, the stockholder of the purchaser must also suffer injury. This does not follow. Suppose that there were a minority stockholder of Ansbacher who had been compelled by the plan to accept in exchange for his stock shares *759 in another enterprise. How is the Sun stockholder injured by that? It is of no concern to him and inflicts no injury upon him.
Plaintiffs appear to concede that if the dissolution of Ansbacher and the distribution of Sun stock had not been required by the plan  that is, if Ansbacher had continued as a holding company  the doctrine of de facto merger would not apply. This concession exposes the weakness of plaintiffs' case.
How can a Sun stockholder have any concern with what Ansbacher does with the Sun stock after it receives it? Surely the presence or absence of injury to him cannot depend on Ansbacher's decision whether to dissolve and distribute the Sun stock or to continue as a holding company.
Whatever may be the case for giving the right of appraisal to a dissenting stockholder of a selling corporation, as many states have done, there seems little reason, at least in cases like the instant one, to accord it to the stockholders of the purchaser. At all events, no state appears to have done so by statute. See the discussion of this general subject in a recent note in 72 Harv.L.Rev. 1132: "The right of shareholders dissenting from corporate combinations to demand cash payment for their shares". And we find no basis in the facts of this case for the granting of such relief in equity on the theory of a de facto merger.
Plaintiffs seek to make some point of the 1956 negotiations between Alexander and the former management of Sun. They say that Alexander's management has taken over Sun. This appears to be true as of early 1957; but in the view we take of the case it is a wholly immaterial matter.
Plaintiffs say that the calling of a stockholders' meeting of Sun is in effect an admission that a merger was involved. On the contrary, the natural inference is that approval of the stockholders was sought because the transaction is one between the corporation and its president.
Some point is sought to be made of the fact that the plan and agreement do not use the words "purchase" or "sale". Nor do they use the word "merger". We attach no significance to this omission. One may surmise that the choice of language was influenced by the necessity of devising a tax-free reorganization. But it does not matter what the reason was. The contract was in legal effect one of purchase and sale.
Finally, plaintiffs suggest that in any event the judgment below should be modified to permit them to amend that portion of the complaint setting forth the first cause of action by alleging that the parties actually intended a merger and purposefully refused to abide by the statutes.
Such an application should have been made below before appeal. It comes too late here. Tracey v. Franklin, 31 Del.Ch. 510, 70 A.2d 250. In that case the Supreme Court's decision finally terminated the litigation; but we think the decision applicable here. Plaintiffs suggest no reason why the application could not have been made at the proper time.
The judgment of the Court of Chancery is affirmed.