HOWARD G. RATH et al., appellants, v. RATH PACKING COMPANY et al., appellees; NEEDHAM PACKING COMPANY, INC., additional defendant-appellee.

No. 51868.

(Reported in 136 N.W.2d 410)

1278

July 29, 1965.

Lynch, Dallas, Smith & Harman, of Cedar Rapids, for appellants.

Swisher, Cohrt, Swisher, Finch & McCann, of Waterloo, and Sullivan & Cromwell, of New York, N. Y., for appellees.

Garfield, C. J.—The question presented is whether an Iowa corporation may carry out an agreement with another corporation, designated "Plan and Agreement of Reorganization", which amounts to a merger in fact of the two without approval of holders of two thirds of its outstanding shares, as provided by section 496A.70, Code, 1962, and its articles of incorporation. The question is one of first impression in Iowa. We must disagree with the trial court's holding this may be done.

Plaintiffs, minority shareholders of Rath, brought this action in equity to enjoin carrying out the agreement on the ground, so far as necessary to consider, it provides for a merger in fact with Needham Packing Company, which requires approval of two thirds of the holders of outstanding Rath shares and that was not obtained. The trial court adjudicated law points under rule 105, Rules of Civil Procedure, in favor of defendants Rath and its officers, and entered judgment of dismissal on the pleadings. It held approval of the plan by holders of a majority of Rath shares was sufficient. Plaintiffs appeal.

Plaintiffs own more than 6000 shares of Rath Packing Company, an Iowa corporation with its principal plant in Waterloo, Iowa, existing under Code, 1962, chapter 496A (Iowa Business Corporation Act). Rath has 993,185 shares outstanding held by about 4000 owners. It is engaged in meat packing and processing, mostly pork and allied products. Its yearly sales for the last five years were from about $267,000,000 to $296,000,000. Its balance sheet as of January 2, 1965, showed assets of about $56,-500,000, current liabilities of about $20,600,000, and long-term debt of about $7,000,000.

Needham Packing Company is a corporation organized in 1960 under Delaware law with its principal plant in Sioux City, Iowa. Its total shares outstanding, including debentures and warrants convertible into stock, are 787,907, held by about 1000 owners. Both Rath and Needham stock is traded on the American Stock Exchange. Needham is also engaged in meat packing, mostly beef. Its annual sales were from about $80,000,000 to $103,000,000. Its balance sheet as of December 26, 1964, showed assets of $10,300,000, current liabilities of $2,262,000, and long-term debt of $3,100,000.

Pursuant to authority of Rath's board prior to April 2, 1965, it entered into the questioned agreement with Needham, designated "Plan and Agreement of Reorganization", under which Rath agreed to: (1) amend its articles to double the number of shares of its common stock, create a new class of preferred shares and change its name to Rath-Needham Corporation; (2) issue to Needham 5.5 shares of Rath common and two shares of its 80-cent preferred stock for each five shares of

Needham stock in exchange for all Needham's assets, properties, business, name and good will, except a fund not exceeding $175,000 to pay expenses in carrying out the agreement and effecting Needham's dissolution and distribution of the new Rath-Needham stock to its shareholders, any balance remaining after 120 days to be paid over to Rath; (3) assume all Needham's debts and liabilities; and (4) elect two Needham officers and directors to its board.

Under the plan Needham agreed to: (1) transfer all its assets to Rath; (2) cease using its name; (3) distribute the new Rath-Needham shares to its stockholders, liquidate and dissolve; and (4) turn over to Rath its corporate and business records.

If the plan were carried out, assuming the new preferred shares were converted into common, the thousand Needham shareholders would have about 54 percent of the outstanding common shares of Rath-Needham and the four thousand Rath shareholders would have about 46 percent.

Under the plan the book value of each share of Rath common stock, as of January 2, 1965, would be reduced from $27.99 to $15.93, a reduction of about 44 percent. Each share of Needham common would be increased in book value, as of December 26, 1964, from $6.61 to $23.90, assuming conversion of the new Rath-Needham preferred.

In the event of liquidation of Rath-Needham, Needham shareholders would be preferred to Rath's under the plan, by having a prior claim to the assets of Rath-Needham to an amount slightly in excess of the book value of all Needham shares. Needham shareholders are also preferred over Rath's under the plan in distribution of income by the right of the former to receive preferred dividends of 80 cents a share—about five percent of Needham's book value. Shortly prior to the time terms of the plan were made public Rath and Needham shares sold on the American Exchange for about the same price. Almost immediately thereafter the price of Needham shares increased and Rath's decreased so the former sold for 50 percent more than the latter.

At a meeting of Rath shareholders on April 26, 1965, 60.1 percent of its outstanding shares, 77 percent of those voted, were

voted in favor of these two proposals: (1) to amend the articles to authorize a class of 80-cent preferred stock and increase the authorized common from 1,500,000 shares ($10 par) to 3,000,000 shares (no par) ; and (2) upon acquisition by Rath of the assets, properties, business and good will of Needham to change Rath's name to Rath-Needham Corporation and elect as its directors Lloyd and James Needham. Holders of 177,000 shares voted against these proposals and 218,000 shares were not voted. The plan was not approved by the shareholders except as above stated.

Rath officers vigorously solicited proxies for the meeting by personal travel, telephone and through a professional proxy soliciting agency. This action was commenced five days prior to the meeting and four days thereafter a supplement and amendment to the petition were filed.

I. We will summarize the provisions of Code chapter 496A so far as material to the appeal.

Section 496A.74 provides that a foreign corporation and a domestic one may merge if permitted by laws of the state where the former is organized and "1. Each domestic corporation shall comply with the provisions of this chapter with respect to the merger * * * of domestic corporations * * *."

Section 496A.68 states that two or more domestic corporations may merge pursuant to a plan approved in the manner provided in this chapter. The board of each corporation shall approve a plan setting forth: (1) the names of the merging corporations and the survivor; (2) terms of the merger; (3) manner of converting shares of each merging corporation into shares of the survivor; (4) any changes in the articles of incorporation of the survivor; (5) other provisions of the merger deemed necessary or desirable.

Section 496A.70 provides for approval of the plan of merger by the shareholders of each merging corporation and "at each such meeting, a vote of the shareholders shall be taken on the proposed plan * * *. * * * The plan * * * shall be approved upon receiving the affirmative vote of the holders of at least two-thirds of the outstanding shares of each such corporation, * * *."

Section 496A.71 states that upon such shareholder approval articles of merger shall be executed by each corporation setting forth: (1) the plan of merger; (2) the number of shares of each corporation outstanding; (3) as to each corporation, the number of shares voted for and against the plan. The articles shall be filed with the secretary of state and county recorder and a certificate of merger shall be issued by the former.

Section 496A.73 provides that upon issuance of the certificate the merger shall be effected and (1) the merging corporations shall be a single corporation—the one designated in the plan as the survivor; (2) the separate existence of the merging corporations, except the survivor, shall cease; (3) the survivor shall have all the powers and be subject to the same duties as a corporation organized under chapter 496A; (4) the survivor shall have all the rights, franchises and properties of the merging corporations; (5) the survivor shall be liable for all obligations of the merging corporations; (6) the articles of incorporation of the survivor shall be deemed amended to the extent that changes therein are stated in the plan of merger.

Section 496A.77 states that any shareholder shall have the right to dissent from any merger to which the corporation is a party.

Section 496A.78 gives a dissenting shareholder, by following the procedure there outlined, the right to be paid the fair value of his shares as of the day prior to that on which the corporate action was approved.

The above sections are those on which plaintiffs rely. They contend these statutes specifically provide for effecting a merger and the same result cannot legally be attained at least without approval of the holders of two thirds of the shares and according to dissenters "appraisal rights"—i.e., the right to receive the fair value of their stock by compliance with the specified procedure.

Defendants contend and the trial court held compliance with the above sections was not required and defendants could legally proceed under other sections of chapter 496A which merely authorize amendments to articles of incorporation and issuance of stock. The sections just referred to provide (section 496A.55) that a corporation may amend its articles in any re-

spects desired and in particular: change its name, change the number of shares of any class, change shares having a par value to those without par and create new classes of shares with preferences over shares then authorized.

Section 496A.56 states articles may be amended by giving shareholders notice of a meeting at which the amendments are to be considered, with a summary of the proposed changes, and upon receiving the affirmative vote of holders of a majority of the stock entitled to vote. The articles of amendment shall be filed with the secretary of state and county recorder (496A.59) and be effective upon issuance by the former of the certificate of amendment (496A.60).

Section 496A.17 provides that shares, with or without par, may be issued for such consideration as the board fixes.

Section 496A.18 states that shares may be paid for in money or property, tangible or intangible, and in the absence of fraud the judgment of the board as to value of the consideration received shall be conclusive.

II. The principal point of law defendants asked to have adjudicated under rule 105, R. C. P., is that the provisions of chapter 496A last referred to are legally independent of, and of equal dignity with, those relating to mergers and the validity of the action taken by defendants is not dependent upon compliance with the merger sections under which the same result might be attained. The trial court accepted this view.

It is clear the view just expressed emanates from the opinion in Hariton v. Arco Electronics, Inc., Del. Ch., 188 A.2d 123, the only precedent called to our attention which sustains the decision appealed from. Virtually the only basis for the conclusion Hariton reaches is the statement of the law point these defendants raised. The opinion contains little discussion and cites no authority that supports the decision.

We can agree all provisions of our chapter 496A are of equal dignity. But we cannot agree any provisions of the act are legally independent of others if this means that in arriving at the correct interpretation thereof and the legislative intent expressed therein we are not to consider the entire act and, so far as possible, construe its various provisions in the light of their relation

to the whole act. See Ahrweiler v. Board of Supervisors, 226 Iowa 229, 231, 283 N.W. 889, 890; Everding v. Board of Education, 247 Iowa 743, 747, 76 N.W.2d 205, 208, and citations; Manilla Community School District v. Halverson, 251 Iowa 496, 501, 502, 101 N.W.2d 705, 708, and citations. Nor should other fundamental rules of statutory construction be ignored in determining the scope and effect of any provision of chapter 496A.

We may also observe that the trial court "concluded the 'safeguards' written into the codes of most states, including Iowa and Delaware, with respect to rights of dissenting shareholders in connection with mergers are based on outmoded concepts of economic realities, particularly in the case of an enterprise such as Rath which is regularly traded on the American Exchange and has a diversified stock ownership with over 4000 shareholders. The court cites especially in this regard articles of Professor Manning, 72 Yale Law Journal 223, and Professor Folk, 49 Virginia Law Review 1261."

If the soundness of this view were admitted, the statutory safeguards should of course be removed by legislative, not judicial, action. Our 1959 legislature evidently had a purpose in enacting what we may call the merger sections of chapter 496A as well as those relating to amending articles and issuing stock. We have frequently pointed out it is not the province of courts to pass upon the policy, wisdom or advisability of a statute. Dickinson v. Porter, 240 Iowa 393, 399, 35 N.W.2d 66, 71, and citations; Steinberg-Baum & Co. v. Countryman, 247 Iowa 923, 929, 77 N.W.2d 15, 18; Mechanicsville v. State Appeal Board, 253 Iowa 517, 529, 530, 111 N.W.2d 317, 325.

III. The "Plan and Agreement of Reorganization" clearly provides for what amounts to a merger of Rath and Needham under any definition of merger we know.

We have approved a statement that a merger exists where one corporation is continued and the other is merged with it, without the formation of a new corporation, from a sale of the property and franchises of one corporation to another. Graeser v. Phoenix Finance Co., 218 Iowa 1112, 1122, 254 N.W. 859. "A merger of corporations consists of a combination whereby one of the constituent companies remains in being—absorbing or merg-

ing in itself all the other constituent corporations." 19 Am. Jur. 2d, Corporations, section 1492.

"* * * a merger signifies the absorption of one corporation by another, which retains its name and corporate identity with the added capital, franchises and powers of a merged corporation." 15 Fletcher Cyc. Corporations, 1961 Revised Volume, section 7041, page 6. "It [merger] is the uniting of two or more corporations by the transfer of property to one of them, which continues in existence, the others being merged therein." Idem, pages 9, 10. See also Note 26 Iowa Law Review 303, 318, 319.

We see no need to multiply these definitions or cite other precedents that support them.

█ If, as we hold, this agreement provides for what amounts to a merger of Rath and Needham, calling it a Plan and Agreement of Reorganization does not change its essential character. A fundamental maxim of equity, frequently applied, is that equity regards substance rather than form. Kurtz v. Humboldt Trust & Savings Bank, 231 Iowa 1347, 1349, 4 N.W.2d 363, 364, and citations; Fischer v. Klink, 234 Iowa 884, 893, 14 N.W.2d 695, 700, 153 A. L. R. 1084, 1091; Cota Plastering Co. v. Moore, 247 Iowa 972, 978, 77 N.W.2d 475, 478; 30 C. J. S., Equity, section 107; 19 Am. Jur., Equity, sections 459, 460.

It is our duty to look behind the form to the substance of the challenged transaction. Kurtz case, supra. See also Gibson v. American Railway Express Co., 195 Iowa 1126, 1132, 193 N.W. 274; Metropolitan Edison Co. v. Commissioner of Internal Revenue, 3 Cir., Pa., 98 F.2d 807, 809; Chicago, S. F. & C. R. Co. v. Ashling, 160 Ill. 373, 381, 43 N.E. 373, 375 ("There is no magic in words. Merely calling the transaction a purchase and sale would not prevent it from being a consolidation."); 19 C. J. S., Corporations, section 1604, page 1367.·

█ IV. The power of a corporation to merge must be derived from the law of the state which created it. There must be some plain enactment authorizing the merger, for legislative authority is just as essential to a merger as to creation of the corporation in the first instance. 15 Fletcher Cyc. Corporations, 1961 Revised Volume, section 7048, pages 32, 33. Legislative authority for a merger will not be implied but must be clearly,

distinctly and expressly conferred. Idem, section 7054, page 44. To like effect is 19 Am. Jur.2d, Corporations, sections 1494, 1495.

At common law no merger could take place without unanimous consent of the stockholders. However, statutes in all jurisdictions now authorize mergers upon a vote of less than all stockholders. A shareholder who dissents to a merger may obtain the value of his stock if the right thereto is provided by statute, if procedure is established therefor and is followed by him. 15 Fletcher, supra, section 7063, pages 62, 63. Sections 496A.77, 496A.78 confer such right and provide such procedure.

The merger sections of chapter 496A clearly and expressly confer the necessary power to merge. Section 496A.74, supra, expressly requires compliance "with the provisions of this chapter with respect to the merger * * * of domestic corporations." Nothing in the sections dealing with amending articles and issuing stock purports to authorize a merger. They make no reference to merger. The most that may fairly be claimed is that they impliedly confer the required power to merge. But this is insufficient.

V. In seeking the scope and effect of the two sets of sections relied upon at least one fundamental rule of statutory construction is applicable. As stated, the merger sections specifically provide for a particular thing—mergers. The sections authorizing amendment of articles and issuance of stock apply to all amendments and stock issues, whether or not amending the articles or issuing stock is part of a merger, as they may or may not be. As applied to mergers, the sections on which plaintiffs rely are specific provisions, those on which defendants rely are not. Crawford v. Iowa State Highway Comm., 247 Iowa 736, 739, 76 N.W.2d 187, 189.

"It is an old and familiar principle * * * that where there is in the same statute a specific provision, and also a general one which in its most comprehensive sense would include matters embraced in the former, the particular provision must control, and the general provision must be taken to affect only such cases within its general language as are not within the provisions of the particular provision. Additional words of

qualification needed to harmonize a general and a prior special provision in the same statute should be added to the general provision, rather than to the special one." 50 Am. Jur., Statutes, section 367.

The sections relied upon are in the same act passed at the same time. The United States Supreme Court has frequently used the language just quoted and we have approved it at least twice. Ginsberg & Sons v. Popkin, 285 U. S. 204, 208, 52 S. Ct. 322, 76 L. Ed. 704, 708, and citations; Crawford v. Iowa State Highway Comm., supra; State v. Flack, 251 Iowa 529, 535, 101 N.W.2d 535, 539.

A closely related rule, many times applied by us, is that where a general statute, if standing alone, would include the same matter as a special statute and thus conflict with it, the latter will prevail and the former must give way. The special provision will be considered an exception to or qualification of the general one. Liberty Consolidated School District v. Schindler, 246 Iowa 1060, 1065, 70 N.W.2d 544, 547, and citations; Gade v. City of Waverly, 251 Iowa 473, 477, 101 N.W.2d 525, 527; Olson Enterprises v. Citizens Insurance Co., 255 Iowa 141, 145, 121 N.W.2d 510, 512. See also Maiatico v. United States, 112 U. S. App. D. C. 295, 302 F.2d 880, 886.

"Another rule which has been applied, is that where one section of a statute treats specially and solely of a matter, that section prevails in reference to that matter over other sections in which only incidental reference is made thereto; * * *." 50 Am. Jur., Statutes, section 366.

It is apparent that if the sections pertaining to amending articles and issuing stock are construed to authorize a merger by a majority vote of shareholders they conflict with the sections specifically dealing with the one matter of mergers which require a two-thirds vote of shareholders. The two sets of sections may be harmonized by holding, as we do, that the merger sections govern the matter of merger and must be regarded as an exception to the sections dealing with amending articles and issuing stock, which may or may not be involved in a merger.

The construction we give these sections is in accord with the cardinal rule that, if reasonably possible, effect will be

given to every part of a statute. Wolf's v. Iowa Employment Security Comm., 244 Iowa 999, 1006, 59 N.W.2d 216, 219; Ashby v. School Township of Liberty, 250 Iowa 1201, 1214, 1215, 98 N.W.2d 848, 858, and citations; Ginsberg & Sons. v. Popkin, supra, 285 U. S. 204, 208, 52 S. Ct. 322, 76 L. Ed. 704, 708, and citations.

The merger sections make it clear the legislature intended to require a two-thirds vote of shareholders and accord so-called appraisal rights to dissenters in case of a merger. It is unreasonable to ascribe to the same legislature an intent to provide in the same act a method of evading the required two-thirds vote and the grant of such appraisal rights. The practical effect of the decision appealed from is to render the requirements of a two-thirds vote and appraisal rights meaningless in virtually all mergers. It is scarcely an exaggeration to say the decision amounts to judicial repeal of the merger sections in most instances of merger.

It is obvious, as defendants' counsel frankly stated in oral argument, that corporate management would naturally choose a method which requires only majority approval of shareholders and does not grant dissenters the right to be paid the fair value of their stock. The legislature could hardly have intended to vest in corporate management the option to comply with the requirements just referred to or to proceed without such compliance, a choice that would invariably be exercised in favor of the easier method.

See in support of the views just stated Applestein v. United Board & Carton Corp., 60 N. J. Super. 333, 345, 159 A.2d 146, 153, affirmed 33 N. J. 72, 161 A.2d 474; Chicago, S. F. & C. R. Co. v. Ashling, supra, 160 Ill. 373, 43 N.E. 373, 375. If defendants' view were to prevail "we obtain the anomalous result of one part of the corporation law rendering nugatory another part of the same law in accomplishing the same result." Applestein case. The Ashling opinion expresses a similar view.

VI. 15 Fletcher Cyc. Corporations, 1961 Revised Volume, section 7165.5, page 307, contains this: "However, where a particular corporate combination is in legal effect a merger or a consolidation, even though the transaction may be otherwise

1290

labeled by the parties, the courts treat the transaction as a de facto merger or consolidation so as to confer upon dissenting stockholders the right to receive cash payment for their shares." Decisions from several jurisdictions are cited in support. Only Heilbrunn v. Sun Chemical Corp., 37 Del. Ch. 552, 146 A.2d 757, affirmed 38 Del. Ch. 321, 150 A.2d 755, 758, is cited as contra.

Basis of the Heilbrunn decision is the court's declared failure to see how any injury was inflicted on shareholders of a corporation that purchased the assets of another. No opinion was expressed as to whether shareholders of the selling corporation could obtain equitable relief. The Delaware court first decided that question in Hariton v. Arco Electronics, Inc., supra, Del. Ch., 188 A.2d 123.

We think the precedents which support the statement quoted from Fletcher are sound. Aside from Applestein v. United Board & Carton Corp., supra, 60 N. J. Super. 333, 159 A.2d 146, affirmed 33 N. J. 72, 161 A.2d 474, the case most frequently cited in support of such view is Farris v. Glen Alden Corp., 393 Pa. 427, 143 A.2d 25, 28. Other precedents which lend support include Gilbert v. Burnside, 197 N. Y. S.2d 623, 632 (involving the same transaction considered in Farris) ; American Hospital and Life Ins. Co. v. Kunkel, 71 N. M. 164, 376 P.2d 956, 962, 963·; Marks v. The Autocar Co., D. C. Pa., 153 F. Supp. 768; Troupiansky v. Henry Disston & Sons, D. C. Pa., 151 F. Supp. 609. See also Metropolitan Edison Co. v. Commissioner of Internal Revenue, supra, 3 Cir.,·Pa., 98 F.2d 807, 809, affirmed 306 U. S. 522, 529, 59 S. Ct. 634, 83 L. Ed. 957, 964.

VII. The trial court thought that while no Iowa case is directly in point, the policy of Iowa law is in accord with its decision, citing Traer v. Lucas Prospecting Co., 124 Iowa 107, 115–119, 99 N.W. 290, and Graeser v. Phoenix Finance Co., 218 Iowa 1112, 254 N.W. 859. Defendants also cite Price v. Holcomb, 89 Iowa 123, 137, 56 N.W. 407, and Beidenkopf v. Des Moines Life Insurance Co., 160 Iowa 629, 142 N.W. 434, 46 L. R. A., N. S., 290. We find no conflict between the conclusion we reach and these precedents. Each of them may be distinguished on the ground the transaction there involved did not amount to a

merger nor obligate any corporation to dissolve. This is also true of the three cases from other jurisdictions and Orzeck v. Englehart, Del., 195 A.2d 375, cited by defendants.

Price v. Holcomb, Traer v. Lucas Prospecting Co. and the Beidenkopf case, supra, hold merely that a corporation may sell all its property where just cause therefor exists and that such sale does not amount to a dissolution of the corporation. Price v. Holcomb points out "Such a sale no more dissolves the corporation than would the giving of a mortgage that might ultimately result in all the property being taken from the corporation." The other three cited Iowa precedents contain similar statements.

Graeser v. Phoenix Finance Co., supra, involves the transaction later considered in Argenbright v. Phoenix Finance Co. of Iowa, 21 Del. Ch. 288, 187 A. 124, also cited by defendants. The latter case holds the transaction was a mere sale of assets, not a common-law merger. Heilbrunn v. Sun Chemical Co., supra, 38 Del. Ch. 321, 325, 150 A.2d 755, 757, points out Argenbright is "distinguishable on the facts, because dissolution of the seller and distribution of the stock of the purchaser were not required as part of the sale * * *." Our Graeser case is also to be distinguished from the present one on the grounds plaintiff sought to recover the value of her stock in the selling corporations and her right thereto should be determined by the courts of Delaware, where the corporations were organized, also that plaintiff had not timely asserted her claim.

VIII. As indicated at the outset, Article XI of Rath's articles of incorporation provides: "The corporation shall not merge with or consolidate into any other corporation * * * except upon obtaining the vote in favor thereof of the holders of record of two-thirds (⅔) of the shares of common stock * * *." Article XII requires the affirmative vote of the holders of two thirds of the shares of common stock to amend Article XI.

In view of our holding in the previous divisions hereof it is unnecessary to consider the effect of these charter provisions. However, we will say that under the logic of our opinion in Berger v. Amana Society, 250 Iowa 1060, 1069, 1070, 95 N.W.2d 909, 914, 915, 70 A. L. R.2d 830, it would seem they afford plaintiffs added ground for relief. The trial court thought the Berger

case was effectively overruled by Code chapter 496A which took effect three months after the opinion was filed. But we think this does not follow. Defendants make no reference to Berger in argument.

IX. We hold entry of judgment of dismissal on the pleadings was error, that defendants should be enjoined from carrying out the "Plan and Agreement of Reorganization" until such time, if ever, as it is approved by the holders of at least two thirds of the outstanding shares of Rath and in the event of such approval plaintiffs, if they dissent to such plan and follow the procedure provided by Code section 496A.78, shall be entitled to be paid the fair value of their shares in Rath. For decree in harmony with this opinion the cause is—Reversed and remanded.

All JUSTICES concur except MASON and RAWLINGS, JJ., who take no part.