OPINION OF THE COURT
Herman Cahn, J.
Irving Bank Corporation (IBC) moves for summary judgment, or in the alternative for a preliminary injunction, to prevent Bank of New York (BNY) from implementing its proposed plan of acquisition of IBC. IBC claims that the plan constitutes a de facto merger, and can only be implemented after approval by two thirds of BNY’s shareholders. BNY seeks dismissal of the complaint on the ground that it fails to state a cause of action. (CPLR 3211 [a] [7].) The facts are not in dispute.
*364 THE FACTS
I. The Parties and Their History
IBC and BNY are both bank holding companies incorporated in the State of New York. In September 1987, BNY announced its intention to acquire IBC. At that time, BNY made an offer to the Board of Directors of IBC to acquire all of the outstanding shares of IBC, which offer was rejected. Over the following months, the proposed acquisition developed into a contested takeover offer, the Board of IBC having not approved the initial offer, nor any subsequent BNY offer. To the contrary, IBC has contested virtually every action taken by BNY in connection with this matter. As a result, several lawsuits are pending before this court involving the two companies and/or their shareholders.
The IBC Board of Directors has stated that it is now in the process of holding an "auction”, in relation to this matter. The "auction” is not relevant to the decision of these motions.
II. BNY’s Plan of Acquisition
BNY’s plan of acquisition is basically a two-step process: (1) First, BNY seeks to acquire all or a majority of the outstanding shares of IBC; and (2) thereafter, BNY hopes to consummate a merger between IBC and either BNY or an affiliate of BNY.
The acquisition of IBC’s shares would be in exchange for cash and shares of BNY. That is, BNY would pay a certain amount of cash plus between 1 and 2 BNY shares for each IBC share acquired.
An obstacle which might prevent or delay the subsequent merger even should BNY successfully achieve acquisition of a majority of the shares of IBC is posed by Business Corporation Law § 912.
Business Corporation Law § 912 would prevent a merger of IBC with BNY, or an affiliate thereof, for five years after the date of acquisition, unless the IBC Board approves such merger prior to the acquisition date. (Business Corporation Law § 912 [b].) To date, IBC’s Board has consistently refused such approval.
Furthermore, merging two giant banks is no easy task. The merger may well take some time, after all approvals have been obtained (if they ever are). BNY has indicated that it may well operate IBC as a subsidiary, for this reason, for some *365 period of time, after the shares of stock it seeks have been acquired.
III. The De Facto Merger Issue
IBC brings this action as a shareholder of BNY. It seeks a declaration that BNY’s plan of acquisition constitutes a merger, within the meaning of Business Corporation Law § 903,[1] and thus requires a vote of two thirds of BNY’s shareholders to approve the transaction. It argues, that although the form of the plan of acquisition is not one of merger, the substance is that of a merger, and that the court should apply the "de facto merger doctrine”, and treat the acquisition plan as a merger.
BNY disputes the existence of the de facto merger doctrine in New York, and furthermore claims that even where the doctrine is recognized, it would not be applicable in these circumstances.
BNY moves for dismissal on the ground that it has properly complied with the Business Corporation Law provision which permits its Board to issue common shares for "such consideration, not less than the par value thereof, as is fixed from time to time by the board.” (Business Corporation Law § 504 [c].) Therefore, BNY claims any exchange of its shares for IBC shares would be valid. Furthermore, it claims that it already has shareholder authority to issue the shares, since the certificate of incorporation authorizes the issuance of 125,000,000 shares, of which less than 40,000,000 have been issued. Issuance of the proposed 31,000,000 shares in the exchange offer, alleges BNY, has already been, in accordance with statutory requirements, approved by the shareholders of BNY. (Business Corporation Law § 801.)[2]
*366 The shareholders of BNY have not approved any merger of IBC into BNY, or other proposed merger, by two-thirds vote. They did approve a corporate resolution authorizing the planned acquisition (which proposal was submitted to them pursuant to the Rule of the New York Stock Exchange), but by less than a two-thirds vote.
THE LAW
The New York Business Corporation Law affords certain rights to corporate shareholders when a merger of their corporation with another corporation is proposed. Business Corporation Law § 903 (a) (2) requires a vote of approval by two thirds of all of the outstanding shares entitled to vote thereon, before the merger can be effected. Business Corporation Law § 910 affords shareholders the right to receive payment for their shares upon merger or consolidation if any shareholders so choose.
The de facto merger doctrine has been used by some courts of equity to preserve shareholders’ rights where the transaction involved, although not a classic merger, is, in essence, a merger. The courts will look through the form of the transaction to its substance.
Under Business Corporation Law § 901 (a) (1), a merger is defined as a transaction leading to the formation of a single surviving corporation. (See, Danziger v Kennecott Copper Corp., index No. 21941/1977, Sup Ct, NY County, Kirschenbaum, J, affd 60 AD2d 552.) The fact that the corporation whose shares are acquired continues to exist means that there is no requirement for shareholder approval under Business Corporation Law § 903 (a) (2). (Danziger v Kennecott Copper Corp., supra.) Effectively, said case stated that in circumstances similar to the instant case the de facto merger doctrine will not be applied. The de facto merger doctrine has been applied in this State, but only where it is apparent that the acquired corporation was quickly to be dissolved.
We need not discuss, at this time, extensively the requirements for a de facto merger. It is clear, however, that two factors are necessary: (1) The actual merger must take place soon after the initial transaction, and (2) the seller corporation must quickly cease to exist.
In Lirosi v Elkins (89 AD2d 903 [2d Dept 1982]), the court held that a transfer of assets from one corporation to another, and the subsequent dissolution of the former corporation, *367 constituted a de facto merger. In Gilbert v Burnside (197 NYS2d 623, revd 13 AD2d 982 [2d Dept 1961], affd 11 NY2d 960), the court held a "reorganization agreement” to be a de facto merger where the agreement provided for the sale of all of the assets of a corporation and its subsequent dissolution. In both cases, the court found that the dissolution of the acquired corporation was an imminently expected occurrence.
There have been decisions in other jurisdictions finding de facto mergers in situations similar to those above. (See, e.g., Applestein v United Bd. & Carton Corp., 60 NJ Super 333, 159 A2d 146, affd 33 NJ 72, 161 A2d 474 [where the agreement provided for a sale of assets, the dissolution of the seller and for the acquirer to assume all the debts of the acquired corporation, a de facto merger existed]; Rath v Rath Packing Co., 257 Iowa 1277, 136 NW2d 410 ["Plan of Reorganization” agreement held de facto merger where agreement provided for sale of all assets, assumption of all debts and liabilities, cessation of business of acquired corporation under its name; and acquiring company to change name to "Rath-Needham”]; Farris v Alden Corp., 393 Pa 427, 143 A2d 25 ["Reorganization Agreement” held de facto merger, where agreement provided for acquirer to immediately acquire all the assets of the target; acquirer to assume all of target’s liabilities; target is to be dissolved].)
A study of those cases in which courts have found de facto merger demonstrates that the factual situation of each case must be independently studied, without "slavish adherence to determinations made in other cases, where there are similarities and also degrees of difference.” (Applestein v United Bd. & Carton Corp., supra, 60 NJ Super, at 351, 159 A2d, at 156.)
Specifically lacking in the instant case is the immediate dissolution or cessation of the business of the target corporation as well as an assumption of all debts and obligations.
We note further that BNY is planning a purchase of the stock, not the assets of IBC. Where the acquirer corporation purchases all the target’s assets, leaving the target as a mere shell, the transaction bears a distinct resemblance to a merger. Here, IBC will survive as a corporate entity, with all its assets intact. Although a merger may occur in the future, the instant transaction is not a merger, but the acquisition of a subsidiary. All the above-mentioned cases which found a de facto merger involved asset sales. See also, Fidanque v American Maracaibo Co. (33 Del Ch 262, 92 A2d 311 [1952]) where a stock sale did not result in a de facto merger.
*368 The plan of acquisition simply does not contain provisions for joining the business affairs and assets of BNY and IBC, as are contained in the plans which were the subject of the actions cited above where a de facto merger was found. Thus, the doctrine of de facto merger has no application here.
New York courts have not, in similar situations, hesitated to look to the form, while declining invitations to abandon form and pierce the corporate veil. (Cross Props. v Brook Realty Co., 37 AD2d 193 [2d Dept 1971].)
Commentators have labeled a transaction, similar to the one in issue herein, a "three-party merger”. There has been some discussion on the apparent loss of voting and appraisal rights by the shareholders of the acquiring corporation. (See, Eisenberg, The Modernization of Corporate Law: An Essay for Bill Cary, 37 U Miami L Rev 187 [1983].)
Plaintiff’s original motions based on the de facto merger doctrine are denied in light of the above decision. Plaintiff’s motion of June 9, 1988, based on the "disclosure” issue is not decided herewith; accordingly, defendant’s motion to dismiss is also not decided herewith.

. Business Corporation Law § 903 (a) (2): "The plan of merger or consolidation shall be adopted at a meeting of shareholders by vote of the holders of two-thirds of all outstanding shares entitled to vote thereon”.

. Business Corporation Law § 801:
"(a) A corporation may amend its certificate of incorporation, from time to time, in any and as many respects as may be desired, if such amendment contains only such provisions as might be lawfully contained in an original certificate of incorporation filed at the time of making such amendment.
"(b) In particular, and without limitation upon such general power of amendment, a corporation may amend its certificate of incorporation from time to time, so as * * *
"(7) To increase or decrease the aggregate number of shares, or shares of any class or series, with or without par value, which the corporation shall have authority to issue.”